**Charles N. MARSHALL, Esquire, Administrator of the Estate of Raymond G. Perciavalle, deceased, Plaintiff,**

v.

**The BOROUGH OF AMBRIDGE, The Ambridge Borough Police Department, Police Officer Robert Appel, Police Officer Robert Kuzma, George Kyrargyros and Walter Panek, Defendants.**

Civ. A. No. 91–167.

United States District Court,
W.D. Pennsylvania.

July 17, 1992.

John J. Zagari, Pittsburgh, Pa., John A. Palmieri, Aliquippa, Pa., for plaintiff.

Eric N. Anderson, P. Brennan Hart, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

LEWIS, District Judge.

Plaintiff Charles M. Marshall, Administrator of the Estate of Raymond G. Perciavalle, brought this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of the Fourth, Fifth, Sixth, Eighth Ninth and Fourteenth Amendments to the United States Constitution, and asserting pendent state law claims for false arrest, wrongful death and survival.

Title 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights or privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To establish a violation of section 1983, plaintiff must prove two elements: first, that the decedent was deprived of a right secured by the Constitution and laws of the United States, and second, that defendants deprived the decedent of this right acting under color of any statute of the Commonwealth of Pennsylvania. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978).

Presently before the court are cross-motions for summary judgment filed by plaintiff and defendants the Borough of Ambridge, the Ambridge Borough Police Department, Police Officers Robert Appel and Robert Kuzma, (former) Chief of Police George Kyrargyros and Mayor Walter Panek.

## FACTS

The events which gave rise to this case are undisputed. On August 29, 1989, Robert Dickenson reported to the Ambridge Borough Police Department that an individual had pointed a gun at him and his companion while they were standing in a parking lot. Dickenson provided the police with a description of the suspect and the car that the person was driving. From the description, several police officers concluded that Raymond G. Perciavalle (the "decedent") was the individual involved in the incident. The decedent had grown up in Ambridge and had had several previous encounters with the police.

The police eventually located Perciavalle at a Stop–N–Go in Ambridge. Officer Appel questioned him about the incident, but he denied any involvement. The decedent then consented to a search of his person and car, which Officer Appel conducted. Officer Appel did not find a gun. Officer Appel then asked the decedent to accompany him to the police station.

The police also asked Dickenson to go to the police station to see whether he could identify the decedent as the individual who had pointed a gun at him. Through a one-way mirror at the police station, Dickenson positively identified the decedent.

The decedent was charged with two counts of simple assault and two counts of reckless endangerment of another person. He was placed in a holding cell in the basement of the borough building. The police department is on the first floor of the borough building. There is a television monitoring system which allows a police officer to work at the sergeant's desk on the first floor and observe a person in custody in one of the holding cells in the basement.

According to the police, approximately five or ten minutes after the decedent was placed in the cell, he began pounding the bars and door. Officer Appel went down to the basement to speak with the decedent. Officer Appel had grown up with the decedent in Ambridge, and had dated the decedent's sister. He informed the decedent that they were completing the paperwork as quickly as possible and would be transporting him to the magistrate. Officer Appel then returned to the first floor.

Eventually, Officer Appel and Officer Larrick, a police officer in training, went down to the lock-up to take the decedent to the magistrate's office. They found the decedent hanging from his belt.

According to the police, although Officers Appel and Kuzma checked the monitor, they did not detect that the decedent had hung himself because the belt was hidden behind one of the bars of the cell. Through the monitor it appeared that the decedent was simply standing at the door of the cell.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The cases of *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986), and *Matsushita Elec. Indus. Co. v. Zenith Radio Co.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) establish the basic rule that a motion for summary judgment will not succeed "if the dispute about a material fact is 'genuine.'" *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. This standard requires an inquiry into "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.,* 477 U.S. at 251–52, 106 S.Ct. at 2512.

Summary judgment is not, as plaintiff's attorney argues, a "drastic remedy."

## A. POLICE OFFICERS ROBERT APPEAL AND ROBERT KUZMA

Both Officers Kuzma and Appel are sued in their individual and official capacities. Officer Kuzma, however, is not a named defendant in the section 1983 claims arising out of the questioning, search and arrest of the decedent, because he did not participate in these events.

### 1. *Fourth Amendment Claim Versus Officer Appel*

Plaintiff asserts that summary judgment should be granted in his favor because the investigatory stop and search of the decedent violated the decedent's right to be free from unlawful searches and seizures. Additionally, plaintiff argues that the decedent was arrested without probable cause.

■ As to the investigatory stop issue, in *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968), the Supreme Court held that an investigatory stop short of an arrest is valid if based upon a reasonable suspicion of criminal activity. Reasonable suspicion must be based upon "specific and articulable facts which, taken together with rational inferences from those facts reasonably warrant that intrusion." *Id.* 392 U.S. at 21, 88 S.Ct. at 1880.

The stop effected in this case was lawful. Dickenson informed the Ambridge Police that a white male with dark hair and beard, wearing a white shirt and driving an older

model maroon or red Thunderbird, pulled a gun on him. In the Daily Police Report dated August 29, 1989, Officer Appel stated that the decedent and his car fit the description. Exhibit to Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment (Daily Police Report). Further, both Officer David (who was with Officer Appel) and Officer Appel stated that the decedent was known to carry a gun. Exhibit to Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment (transcript of police calls). Therefore, the investigatory stop did not violate the decedent's Fourth Amendment rights, and plaintiff may not premise the section 1983 claim on this issue.

As to the issue of the search, the decedent consented to the search of his vehicle. Exhibit to Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment (Daily Police Report). Plaintiff, however, asserts that the decedent's consent was not voluntary because he was in a public place in the presence of five police officers. Voluntariness is a question of fact that must be determined from all of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 248–49, 93 S.Ct. 2041, 2058–59, 36 L.Ed.2d 854 (1973). This material question of fact is best left to a jury for determination.

As to the issue of probable cause for the arrest, in *Patzig v. O'Neil,* 577 F.2d 841, 848 (3d Cir.1978), a prison suicide case, the Court of Appeals for the Third Circuit stated that "the question of probable cause in a section 1983 damage suit is one for the jury." Therefore, the issue of whether the decedent was arrested without probable cause will also remain in the case.

In conclusion, there remains a genuine issue of fact as to whether Officer Appel acted with legitimate probable cause with respect to the search and the arrest of the decedent. No such factual dispute exists concerning the constitutionality of the *Terry* stop. The cross-motions for summary judgment with respect to the Fourth Amendment claim against Officer Appel will both be denied.

### 2. *Fifth Amendment Miranda Claim Versus Officer Appel*

Plaintiff asserts that because no *Miranda* warnings were given to the decedent, the decedent's right to be free from self incrimination was violated, and therefore, summary judgment should be granted in his favor. The court disagrees.

A section 1983 claim based upon an alleged failure to give *Miranda* warnings fails as a matter of law. *Williams v. Tansey,* 610 F.Supp. 1083, 1085 (E.D.Pa. 1985). A claim under section 1983 must be based on a deprivation of a constitutional or other federal right. *Miranda* warnings are "not themselves rights provided by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected." *Oregon v. Elstad,* 470 U.S. 298, 305, 105 S.Ct. 1285, 1290, 84 L.Ed.2d 222 (1985), *citing, New York v. Quarles,* 467 U.S. 649, 654, 104 S.Ct. 2626, 2630, 81 L.Ed.2d 550 (1984). Furthermore, no prejudice flows from a failure to give *Miranda* warnings unless the resulting statement is used against the declarant in a criminal proceeding. No evidence on this record indicates that the decedent even gave a statement to the police. Summary judgment in favor of Officer Appel and against plaintiff will be entered on the Fifth Amendment claim.

### 3. *Sixth Amendment Claim Versus Officer Appel*

Plaintiff also argues that the decedent was denied his constitutional right of access to counsel. Again, the court disagrees.

The Sixth Amendment right to counsel attaches at the time adversarial judicial proceedings have been initiated against a person by way of formal charge, preliminary hearing, indictment, information or arraignment. *Brewer v. Williams,* 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977), *citing Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972). In Pennsylvania, a criminal defendant who cannot afford an attorney must be assigned an attorney pri-

or to the preliminary hearing. Pa. R.Crim.P. 316(b). The comments to Rule 316 state that "[i]deally, counsel should be assigned to an indigent defendant ... immediately after preliminary arraignment in all court cases." In this case, plaintiff was waiting to be transported to a preliminary arraignment. Therefore, no violation of his right to counsel occurred. Thus, summary judgment will be granted in favor of Officer Appel, and plaintiff's motion for summary judgment on the Sixth Amendment claim will be denied.

### 4. *Eighth Amendment Claim Versus Officers Appel and Kuzma*

■■■■ The decedent was a pretrial detainee, so he cannot base his section 1983 action on an alleged Eighth Amendment violation. The constitutional ban against cruel and unusual punishment only applies to those who have been convicted of criminal offenses. *Romeo v. Youngberg*, 644 F.2d 147, 156 n. 8 (3d Cir.1980) (en banc), *vacated on other grounds*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). A sentenced inmate may rely on the cruel and unusual punishment provision of the Eighth Amendment, whereas a pretrial detainee must rely on the due process clause of the Fifth and Fourteenth Amendments. *See Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1873 n. 16, 60 L.Ed.2d 447 (1979). Therefore, the court will deny plaintiff's motion for summary judgment and grant summary judgment in favor of Officers Appel and Kuzma on the Eighth Amendment issue.

### 5. *Fifth and Fourteenth Amendments Due Process Claims Versus Officers Appel and Kuzma*

Plaintiff asserts that summary judgment should be granted in his favor because the show-up identification of the decedent and the deliberate indifference of the police officers violated the decedent's right to due process.

■■■ As to the show-up identification, both parties agree that a "show-up" identification allows identification before the suspect has altered his appearance and while the witness' memory is fresh, and permits the quick release of innocent persons. *Blanco v. Singletary*, 943 F.2d 1477, 1509 (11th Cir.1991), *cert. denied*, —— U.S. ——, ——, 112 S.Ct. 2282, 2290, 119 L.Ed.2d 207, 213 (1992). Show-ups are not unnecessarily suggestive unless the police aggravate the suggestiveness of the confrontation. *Id.*

■■■ In this case, the perpetrator allegedly circled the parking lot in which Dickenson and his companion were standing four times. The perpetrator was approximately 30 feet away. Dickenson Deposition, pp. 10–12. The culprit pointed a gun at Dickenson and his friend, gaining Dickenson's full attention. The description which Dickenson gave of the perpetrator quickly led the police to the decedent. Approximately one hour later at the police station, Dickenson positively identified the decedent as the culprit, and Dickenson had no doubt in his mind that the decedent was the perpetrator. Dickenson Deposition, p. 32.

Throughout the identification procedure, Dickenson was under the impression that the police were trying not to prejudice the process. Dickenson Deposition, p. 38. The police warned Dickenson not to be hasty. Dickenson Deposition, p. 38. Considering all of these circumstances, the identification of the decedent was not unnecessarily suggestive and did not violate the decedent's constitutional rights.

■■■ As to the alleged deliberate indifference of the police officers, in *Colburn v. Upper Darby Township*, 838 F.2d 663, 669 (3d Cir.1988), *cert. denied*, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989) (*Colburn I*), the Court of Appeals for the Third Circuit stated that "if [custodial] officials know or should know of the particular vulnerability to suicide of an inmate, then the [due process clause] imposes on them an obligation not to act with reckless indifference to that vulnerability." A plaintiff in a prison suicide case has the burden of establishing three elements: (1) the detainee had a "particular vulnerability to suicide," (2) the custodial officer or officers knew or

should have known of the vulnerability, and (3) those officers "acted with reckless indifference" to the detainee's particular vulnerability. *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1023 (3d Cir. 1991) (*Colburn II*). All of these elements require a level of culpability higher than a negligent failure to protect the detainee from self-inflicted harm. *Id.*, 946 F.2d at 1024.

Plaintiff asserts that summary judgment should be granted in his favor because "[t]he deposition testimony clearly shows that Perciavalle was well known to the Ambridge Police Department as being suicidal and an alcoholic and a drug abuser with an extensive criminal record." Plaintiff's Memorandum of Law in Opposition to the Defendants' Appel and Kuzma Brief in Support of Motion for Summary Judgment, p. 16.

Plaintiff argues that the police department knew that the decedent was suicidal because of two prior incidents. The first incident occurred on October 25, 1984, when Diana MacFarland, the decedent's sister, contacted Police Officer Sabol and informed him that the decedent might be contemplating suicide. That afternoon, Officer Sabol saw the decedent standing outside the guardrail on the Ambridge–Aliquippa Bridge. Unaware that he was being watched, the decedent climbed back over the rail and returned to his car. This incident was entered on the Daily Police Log by Officer Sabol. Exhibit Attached to Plaintiff's Motion for Summary Judgment (Daily Police Log of October 25, 1984). The second incident occurred in 1988, when Police Officer Taddy released the decedent from the lock-up because he threatened to commit suicide while in the lock-up.

Plaintiff also argues that the police officers acted with reckless indifference toward the decedent because they failed to remove his belt and shoelaces, and failed to observe him closely through the television monitor.

Officers Appel and Kuzma respond that they did not possess knowledge that the decedent was likely to attempt suicide while in their custody and, therefore, they lacked the requisite culpable state of mind to be held liable under section 1983 on a theory of reckless indifference.

There is no evidence that Officers Appel and Kuzma knew or should have known of the decedent's propensity for suicide. Both officers, who knew the decedent before his arrest on August 29, 1989, stated that they did not believe him to have emotional problems, or to be suicidal. Appel Deposition, p. 62; Kuzma Deposition, p. 44. Additionally, Officers Appel and Kuzma testified that they had no knowledge of the bridge incident which occurred approximately five years before the decedent's suicide. Appel Deposition, p. 62; Kuzma Deposition, p. 43. According to the police officers, the decedent was arrested on several occasions in which he was placed in the Ambridge lock-up without incident.

 The phrase "should have known" means that the likelihood of suicide was so obvious that a lay person would easily recognize the necessity for preventative action. *Colburn II*, 946 F.2d at 1025. Under this legal standard, the facts that the decedent was agitated, upset and perhaps intoxicated do not support the conclusion that Officers Appel and Kuzma "should have known" of the decedent's propensity to commit suicide. In fact, Officer Appel testified that he did not detect an odor of alcohol on the decedent, and Officer Kuzma did not believe that the decedent was intoxicated because of the way he talked, walked and acted. Appel Deposition, p. 67; Kuzma Deposition, p. 109–110.

Moreover, other circumstances surrounding the lock-up do not demonstrate a "deliberate indifference" on the part of the police officers. For example, after the decedent began banging on the bars, Officer Appel went to speak with the decedent in an attempt to calm him down. Officer Appel believed that he had accomplished this. Officer Appel testified that during that conversation, the decedent joked with him, and they discussed what they were going to do when they came back from the arraignment. Appel Deposition, p. 91. This suggests that Officer Appel did not have

any indication that the decedent would commit suicide.

Plaintiff misses the mark with his assertion that "there was plenty of time allowing for the removal of the Decedent's belt prior to being incarcerated." Plaintiff's Memorandum of Law in Opposition to the Defendants' Appel and Kuzma Brief in Support of Motion for Summary Judgment, p. 16. The due process clause does not impose liability for a negligent failure to protect a detainee from self-inflicted injury. A higher level of culpability, one involving reckless or deliberate indifference, is required. *Colburn II*, 946 F.2d at 1024. Officer Appel stated that he decided, based upon his past experiences with the decedent, to allow him to retain his personal belongings while in the lock-up. Appel Deposition, p. 95. This experience-based judgment simply does not constitute reckless or deliberate indifference.

Therefore, on the due process claim, plaintiff's motion for summary judgment will be denied, and summary judgment will be entered in favor of Officers Appel and Kuzma.

6. *Officer Appel's Qualified Immunity Defense*

■ Officer Appel asserts that he is entitled to qualified immunity on the claims asserted against him in his individual capacity because he was acting in good faith while carrying out his duties.

The doctrine of qualified immunity shields "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). An arrest made without probable cause, for example, clearly violates established rights. *Deary v. Three Un–Named Police Officers*, 746 F.2d 185, 192 (3d Cir.1984).

In *Deary*, the Court of Appeals for the Third Circuit held:

a finding of probable cause—which would preclude the finding of a constitutional violation for section 1983 purposes—and a finding of entitlement to qualified immunity—which would preclude liability even if the defendants had violated [the plaintiff's] constitutional rights—both turn on the reasonableness of the defendant police officers' actions in arresting and detaining [the plaintiff]—a determination which we have held presents a question of fact for the jury.

*Deary*, 746 F.2d at 192. The court concluded that the reasonableness of the actions taken by the defendant police officers will determine the question of probable cause. Although the doctrines of reasonableness and probable cause may be analytically different, both depend upon the jury's answer to this question: Was probable cause present? *Id.*

Applying *Deary*, this court concludes that the issue of whether Officer Appel is entitled to qualified immunity for the arrest is a factual issue that must be determined, along with the issue of probable cause for arrest, by a jury.

A further application of *Deary* leads this court to conclude that the question of whether Officer Appel is entitled to qualified immunity for the search should also be decided by a jury at the time it addresses the issue of consent to the search.

7. *Pendent Claims Versus Officers Appel and Kuzma*

■ Neither the plaintiff nor the police officer defendants argue that summary judgment should be granted in their favor on the pendent claims of false arrest, wrongful death and survival. In any event, Officer Kuzma is not a named defendant under the false arrest claim. Further, in *Deary*, the Court of Appeals for the Third Circuit stated that a jury's determination of whether probable cause was present will dispose of common law claims of false arrest or false imprisonment. *Id.*, 746 F.2d at 193. A predicate of these claims is that probable cause for the actions taken by the defendants was lacking. *Id.*, at 193, n. 8. Therefore, the pendent claims remain viable.

In conclusion, plaintiff may pursue his section 1983 claim against Officer Appel based on the alleged violations of the Fourth Amendment (except the investigatory stop). A jury must determine whether Officer Appel is entitled to qualified immunity on these claims. Plaintiff may also pursue his pendent claims against the defendant officers.

Summary judgment will be granted in favor of Officer Appel on the Fifth, Sixth, Eighth and Fourteenth Amendment claims, and in favor of Officer Kuzma on the Eighth and Fourteenth Amendment claims. Plaintiff's motions for summary judgment on those claims will be denied.

## B. BOROUGH OF AMBRIDGE AND AMBRIDGE BOROUGH POLICE DEPARTMENT

■ Initially, defendant Ambridge Borough Police Department claims that summary judgment should be granted in its favor because it is merely an administrative branch or extension of the municipal corporation known as the Borough of Ambridge. Alternatively, the police department asserts that even if it could be considered a separate governmental entity, as a subordinate department of the borough, its liability would necessarily coincide with the liability of the Borough of Ambridge.

This court agrees that the police department is an arm of the borough, and in order to simplify the case for a jury, summary judgment will be granted in favor of the Ambridge Borough Police Department.

### 1. *Custom or Policy*

■ A municipality is liable under section 1983 when a plaintiff can demonstrate that the municipality itself, through the implementation of a municipal policy or custom, causes a constitutional violation. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

■ Plaintiff asserts that summary judgment should be granted in his favor on the section 1983 claim because since 1945 there have been a total of eight suicide/suicide attempts in the Ambridge lock-up. Ac-

cording to the plaintiff, in both the years 1945 and 1971, two individuals committed suicide by hanging themselves with their belts. In 1977, another detainee attempted to commit suicide. In the late 1970's, a person attempted to commit suicide by hanging himself with his shoelaces. In 1986, a person attempted to commit suicide by hanging himself with his belt, and then after his belt was taken from him, attempted to commit suicide by hanging himself with his shirt. In 1989, one man attempted to hang himself with his shirt, but after it was taken away from him, attempted to set his own clothing on fire with a lighter. In 1990, a person hung himself with his tube socks. Plaintiff's Memorandum of Law in Opposition to the Defendants Borough of Ambridge and Walter Panek's Motion for Summary Judgment, pp. 23–24. Plaintiff concludes that in light of the great number of suicide attempts and suicides, the borough should have established a set of regulations governing the removal of certain items, such as belts and shoelaces, from people who are placed in the Ambridge lock-up.

The borough disputes plaintiff's rendition of the Ambridge lock-up's suicide record. The borough contends that prior to the decedent's suicide, there was only one successful suicide. Defendant's Brief in Support of Motion for Summary Judgment, p. 17.

Neither the plaintiff's attorney nor the attorney for the Borough of Ambridge cite to any evidence to support their respective positions concerning the number of suicides which have occurred in the Ambridge lock-up since 1945. Such unsubstantiated positions are of no use to a court in deciding a summary judgment motion. Absent clear evidence establishing the magnitude of the suicide problem at the Ambridge lock-up, it is impossible for this court to determine, as a matter of law, that the borough did, or did not, engage in a long-standing custom or practice of failing to promulgate directives or procedures regarding suicide prevention of detainees.

### 2. *Failure to Train*

■ Municipal liability under section 1983 can be predicated upon a failure to train only where that failure amounts to "deliberate indifference to the [constitutional] rights of persons with whom the police come in contact." *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989).

In a prison suicide case, this means that the plaintiff must:

> (1) identify specific training not provided that could reasonably be expected to prevent the suicide that occurred, and (2) must demonstrate that the risk reduction associated with the proposed training is so great and so obvious that the failure of those responsible for the content of the training program to provide it can reasonably be attributed to a deliberate indifference to whether the detainees succeed in taking their lives.

*Colburn II*, 946 F.2d at 1030.

■ Plaintiff asserts that summary judgment should be granted in his favor because the borough failed to establish procedures regarding the handling of persons who are potentially suicidal, and failed to train its officers under such procedures. Specifically, plaintiff contends that the borough should have promulgated a written set of regulations which directed the police officers to remove any item that could cause harm to a detainee when the detainee was placed in the lock-up. If the borough had had such procedures in effect, plaintiff asserts, the decedent in this case would not have had the instrument to commit suicide.

The borough concedes that no pamphlet of written regulations existed at the time of the decedent's death concerning the procedures to be followed when a person is taken into custody. The borough contends, however, that the police officers received oral instruction from Chief Kyrargyros. The borough supports its contention with some evidence of record. Specifically, Officer Thomas Hunt stated that when he was hired as a part-time officer, Chief Kyrargyros specifically informed him that belts, and any other articles which could cause harm, should be removed from a person in custody. Hunt Deposition, p. 9.

In *Colburn II*, a prison suicide case, defendant Upper Darby Township had written policies pertaining to "Control of Prisoners." *Colburn II*, 946 F.2d at 1022. One item stated: "[D]uring or immediately after any booking procedure, all prisoners will be thoroughly searched for any weapons or any other articles which could be used in any way to harm themselves or others...." Another item provided: "[A]ccording to state law, the well being of all confined prisoners must be checked *in person* every thirty minutes by a jailer, and this information logged...." *Id.* There remains a genuine issue of material fact as to whether Ambridge Borough's failure to have such policies in effect, and to train its officers to follow those policies, constitutes deliberate indifference.

The Borough of Ambridge also bases its argument on the fact that it has been suffering great financial problems which have limited the amount of funding available for the training of police officers. The borough asserts that the cost of training officers, and of paying their replacements during the period of training, was prohibitive given its fiscal difficulties.

In *Simmons v. City of Philadelphia*, 947 F.2d 1042 (3d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1671, 118 L.Ed.2d 391 (1992), Judge Becker stated that factors such as a municipality's decision not to allocate resources should be considered to determine whether a municipality breached a constitutional duty for failure to train. *Id.* at 1069. Thus, Ambridge Borough's contention is not without support. Such mitigating factors, however, should be considered by a jury.

Both parties' motions for summary judgment will be denied as to the municipal custom or policy and failure to train issues.

### C. POLICE CHIEF GEORGE KYRARGYROS

Plaintiff maintains that summary judgment should be granted in his favor on the section 1983 claims against former Police Chief George Kyrargyros because he failed

to properly train the police officers to detect and prevent suicides, and engaged in a long-standing custom and practice of allowing each police officer to use his own discretion when placing an individual in a holding cell. Plaintiff further alleges that Chief Kyrargyros had actual knowledge of the suicide problems in the Ambridge Borough holding cells.

■■■■ Plaintiff sued Chief Kyrargyros in both his individual and official capacitates. Personal capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). Official capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. *Id.* As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Id.* at 166, 105 S.Ct. at 3105.

Because a claim against a municipal official in an official capacity is tantamount to a claim against the entity, it is not necessary to bring official capacity actions against local governmental officials. Schwartz & Kirklin, *Section 1983 Litigation: Claims, Defenses, and Fees,* vol. 1, p. 320. Therefore, summary judgment is appropriate on the claim brought against Chief Kyrargyros in his official capacity. This will simplify the case for the jury.

Only those claims asserted against Chief Kyrargyros in his individual capacity will be discussed below.

### 1. *Failure to Train*

■■■■ In *Brown v. Grabowski,* 922 F.2d 1097 (3d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991), the Court of Appeals for the Third Circuit reversed a denial of summary judgment in a section 1983 action against a police chief who was sued in his individual capacity. The court, in interpreting *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), held that "the [police] official's failure to train, supervise, and

discipline subordinates could not, absent a showing of the official's direct involvement in the subordinates' unconstitutional actions, amount to the breach of a clearly established constitutional duty and that he was entitled to qualified immunity." *Brown,* 922 F.2d at 1120.

There is no evidence in this case that Chief Kyrargyros participated in the alleged violations of the decedent's rights. Apparently, Chief Kyrargyros did not even learn of the decedent's suicide until the following day. Therefore, Chief Kyrargyros is entitled to qualified immunity on the failure to train issue.

### 2. *Custom or Policy*

■■ In *Brown v. Grabowski,* the Court of Appeals for the Third Circuit, citing the case of *Stoneking v. Bradford Area School District,* 882 F.2d 720, 725 (3d Cir. 1989), *cert. denied,* 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990), suggested that a police official may be held liable in an individual capacity when the police official, acting with deliberate indifference, establishes or maintains a policy or custom that directly causes a deprivation of constitutional rights. *Brown,* 922 F.2d at 1120 n. 16.

For the reasons expressed in section B of this opinion, there is a question of fact as to whether Chief Kyrargyros acted with deliberate indifference when he permitted each police officer to use his own discretion when placing an individual in a holding cell and when he failed to establish procedures instructing the police officers to remove any instrument which could cause harm to a detainee.

In conclusion, the court will grant the motion for summary judgment filed by Chief Kyrargyros on the failure to train issue, but will deny it on the custom or policy issue. Plaintiff's motion for summary judgment will be denied.

### D. MAYOR WALTER PANEK

For the reasons expressed in section C of this opinion, summary judgment will be granted on plaintiff's claims against Mayor

Walter Panek acting in his official capacity. Only those claims asserted against Mayor Panek in his individual capacity will be discussed below.

Plaintiff seeks summary judgment against Mayor Panek because he either failed to take any preventative measures or acquiesced in a longstanding practice or custom of inaction with regard to the prevention of suicide and suicide attempts in the lock-up facility.

### 1. *Failure to Train*

Plaintiff's complaint does not appear to assert a failure to train claim against Mayor Panek. Because a generous reading of the complaint might yield a failure to train claim, it should be noted that such a claim fails as a matter of law on these facts. Under *Brown v. Grabowski,* plaintiff's claim would fail because he has failed to present any evidence that Mayor Panek directly participated in the alleged violations of the decedent's Constitutional rights.

### 2. *Custom or Policy*

The passage discussed above from *Brown v. Grabowski*—stating that a police official may be held liable in his individual capacity when the police official, acting with deliberate indifference, establishes or maintains a policy or custom that directly causes a deprivation of constitutional rights—creates a fact question for a jury concerning whether Mayor Panek acted with deliberate indifference when he failed to take any steps to prevent the suicides and suicide attempts in the Ambridge lock-up. Therefore, both parties' motions for summary judgment on the custom or policy claim will be denied.