Mable L. FORD, Administratrix of the Estate of Shawntee L. Ford, Deceased, and Mable L. Ford in Her Own Right, Plaintiff,

v.

Althea Denise JOHNSON, Individually and in Her Capacity as Caseworker for Allegheny County Children and Youth Services, Frank J. Petras, Jr., Individually and in His Capacity as Caseworker for Allegheny County Children and Youth Services, Melrena Flowers, Individually and in Her Capacity as the Director of Mon Valley Regional Office of Allegheny County Children and Youth Services, Mary Garland Freeland, Individually and in Her Capacity as Director of Allegheny County Children and Youth Services, Allegheny County Children and Youth Services, a Governmental Entity Organized and Existing Under the Laws of the Commonwealth of Pennsylvania, Allegheny County Institution District, a Governmental Entity Organized and Existing Under the Laws of the Commonwealth of Pennsylvania, Allegheny County a Political Subdivision Organized Under the Laws of the Commonwealth of Pennsylvania, Thomas J. Foerster, Pete Flaherty, Larry Dunn, Individually and in Their Capacity as Members of the Allegheny County Board of Commissioners and Executive and Administrative Officers of the Allegheny County Institution District, Jeffrey Brady, Individually and in His Capacity as Police Officer for the City of Pittsburgh, Robert Swartzwelder, Individually and in His Capacity as a Police Officer for the City of Pittsburgh, Gwendolyn J. Elliott, Individually and in Her Capacity as Police Commander, Investigations Unit and Mayor's Office of Youth Policy for the City of Pittsburgh, Earl Buford, Individually and in His Capacity as The Chief of Police and Highest Executive Officer of Police Force of the City of Pittsburgh, a Political Subdivision Organized Under the Laws of the Commonwealth of Pennsylvania, Howard Johnson's Motor Lodge, a Corporation, and St. Francis Medical Center, a Corporation, Defendant.

Civ. A. No. 94–2201.

United States District Court, W.D. Pennsylvania.

Sept. 26, 1995.

Arnold Cantor, Pittsburgh, PA, Max A. Levine, Pittsburgh, PA, for plaintiff.

Eric N. Anderson, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, PA, for Althea D. Johnson, Frank Petras, Melrena Flowers, Mary Freeland, Allegheny Co. Children & Youth Serv., Allegheny Co. Institution Dist.

Nora B. Fischer, Pietragallo, Bosick & Gordon, Pittsburgh, PA, Lisa Colavtti, Ira Weiss, Allegheny Co. Law Dept., Pittsburgh, PA, for Allegheny County, Thomas J. Foerster, Pete Flaherty, Larry Dunn.

Jacqueline Morrow, Howard J. Schulberg, City of Pittsburgh Law Dept., Pittsburgh, PA, for Jeffrey Brady, Gwen J. Elliott, Robt. Swartzwelder, Earl Buford.

Scott T. Redman, Pittsburgh, PA, for Howard Johnson's Motor Lodge.

John C. Conti, Dickie, McCamey & Chilcote, Pittsburgh, PA, for St. Francis Medical Center.

### *OPINION AND ORDER OF COURT*

AMBROSE, District Judge.

This civil action was initiated by Mable L. Ford ("Ford") in the Court of Common Pleas of Allegheny County on November 23, 1994. Ford brought the action in her own right and as Administratrix of the Estate of her late daughter, Shawntee L. Ford ("Shawntee"). On March 8, 1994, two year old Shawntee was beaten to death by her father, Maurice Booker, at the Howard Johnson's Motor Lodge in Pittsburgh, Pennsylvania. Shawntee had been placed in the custody of her father by the Court of Common Pleas of Allegheny County. Prior to being placed in the custody of her father, Shawntee had been in the custody of the Allegheny County Children and Youth Services ("CYS"). Ford names as Defendants in the action CYS, as well as two of its caseworkers and two of its directors, three Allegheny County Commissioners, two Pittsburgh Police Officers, the Commander and the Chief of the City of Pittsburgh Police, the City of Pittsburgh, Howard Johnson's Motor Lodge, and St. Francis Medical Center. On December 23, 1994, this case was removed to this Court pursuant to 28 U.S.C. § 1441(c) based on the existence of federal question jurisdiction.

Pending before the Court are two motions. A Motion to Dismiss pursuant to Fed. R.Civ.P. 12(b)(6) was filed by Defendants Althea Denise Johnson; Frank J. Petras, Jr.; Melrena Flowers; Mary Garland Freeland

(collectively referred to herein as the "CYS Defendants"); CYS; the Allegheny County Institution District; and Thomas J. Foerster, Pete Flaherty and Larry Dunn (in their capacity as Executive and Administrative Officers of the Allegheny County Institution District). The following Defendants have joined this Motion to Dismiss: Allegheny County; Thomas J. Foerster, Pete Flaherty and Larry Dunn (in their capacity as Allegheny County Board of Commissioners); and Thomas J. Foerster, Pete Flaherty and Larry Dunn (as individuals).

Additionally, a Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56 has been filed by the City of Pittsburgh, Officer Jeffrey Brady, Officer Robert Swartzwelder, Gwendolyn J. Elliott, and Earl Buford (collectively referred to herein as the "police Defendants"). For the reasons set forth below, the Motion to Dismiss will be granted in part and denied in part. The Motion for Summary Judgment will be denied, without prejudice.

### I. Motion to Dismiss

In deciding a motion to dismiss, all factual allegations and all reasonable inferences therefrom must be accepted as true and viewed in the light most favorable to the non-moving party. *Leatherman v. Tarrant County Narcotics Unit,* —— U.S. ——, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993); *Colburn v. Upper Darby Township,* 838 F.2d 663, 666 (3d Cir.1988). We should not dismiss a complaint, especially in a civil rights action, unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claims which would entitle her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). A motion to dismiss under 12(b)(6) tests the legal sufficiency of the complaint; it does not attack the merits of the case. *Plasko v. City of Pottsville,* 852 F.Supp. 1258 (E.D.Pa.1994), citing 5a C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1364, at 340 (1990).

Defendants raise a number of arguments in their motion. Defendants first allege that Ford has not sufficiently identified the constitutional rights of the decedent which were allegedly violated. Defendants next argue that even assuming the constitutional rights are sufficiently identified, Ford has failed to state a claim under 42 U.S.C. § 1983 upon which relief may be granted based on the holding in *DeShaney v. Winnebago County Dep't of Social Serv.,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). Additionally, Defendants contend that Ford's attempt to state a claim for violations of Shawntee's Eighth and Fourteenth Amendment Rights must fail because the constitutional ban against cruel and unusual punishment applies only to those who have been convicted of criminal offenses. With respect to Ford's claims based upon 42 U.S.C. § 601 *et seq.* and 45 C.F.R. § 233 *et seq.,* Defendants argue that financial appropriation statutes do not grant a citizen an entitlement to any benefits from the state which are protected by the Constitution. Finally, Defendants assert that any state law claims asserted by Ford must be dismissed under the doctrines of governmental and official immunity.

Ford, in her brief, does not address Defendants' arguments with respect to the viability of her Eighth and Fourteenth Amendment claims, nor does she address Defendants' argument that 42 U.S.C. § 601 *et seq.* and 45 C.F.R. § 233 *et seq.* do not provide a citizen with entitlement to benefits from the state which are protected by the Constitution.

Clearly, the Eighth Amendment ban on cruel and unusual punishment, applicable to the states through the Fourteenth Amendment, applies only to those who have been convicted of a criminal offense. *Marshall v. Borough of Ambridge,* 798 F.Supp. 1187, 1193 (W.D.Pa.1992). Additionally, Ford provides no authority that 42 U.S.C. § 601 *et seq.* and 45 C.F.R. § 233 *et seq.* provide a basis for her recovery. Ford's Eighth and Fourteenth Amendment claims for cruel and unusual punishment, as well as her alleged claims under 42 U.S.C. § 601 *et seq.* and 45 C.F.R. § 233 *et seq.* will accordingly be dismissed.

With respect to the pendent state law claims, Ford "concedes that no set of facts can be alleged to establish pendent [sic] state law claims against the agency defendants

under these statutes because of the bar of government immunity . . ." (Plaintiff's Brief, p. 18) Ford does argue, however, that the individual County Defendants are not protected by any immunity pursuant to 42 Pa. Cons.Stat.Ann. § 8550 (relating to willful misconduct).

■ Ford vigorously contests the assertion of Defendants that her substantive due process cause of action under 42 U.S.C. § 1983 is barred under the holding of *DeShaney* and its progeny. While recognizing the applicability of *DeShaney*, Ford attempts to distinguish it from the facts of this case. Ford claims that she has stated a cognizable theory of recovery under both a "special relationship" theory and a "state-created danger" theory. The Complaint can be read to state either theory.[1] I begin my discussion with an overview of *DeShaney*.

The facts of *DeShaney* are as follows. When Joshua DeShaney was one year old, his parents were divorced. Randy DeShaney, Joshua's father, was awarded custody of the child. Two years after the divorce, Winnebago County, Wisconsin, authorities first learned that Joshua might be a victim of child abuse. The Winnebago County Department of Social Services ("DSS") interviewed Randy DeShaney concerning the alleged abuse. Randy DeShaney denied the allegations and DSS did not pursue them further.

A year later, Joshua was admitted to a local hospital with multiple bruises and abrasions. DSS was notified by the physician who examined Joshua that Joshua was the suspected victim of child abuse. Joshua was then placed by the juvenile court in the temporary custody of the hospital. A "Child Protection Team" was convened by the county to review Joshua's situation. The Child Protection Team determined that there was insufficient evidence of child abuse to retain Joshua in the custody of the court. Protection measures were recommended, however,

by the Child Protection Team. These measures included enrolling Joshua in a preschool program, providing his father with certain counselling services, and encouraging his father's girlfriend to move out of the home. Joshua was then returned to the custody of his father.

A month after being returned to the custody of his father, Joshua was once again treated by emergency room personnel for suspicious injuries. No action was taken by the DSS caseworker. During the next six months, the DSS caseworker made monthly visits to Randy DeShaney's home, during which she not only observed a number of suspicious injuries on Joshua's head, but she also found that the protective measures recommended by the Child Protection Team had not been followed. In November, 1983, Joshua was once again treated in the emergency room for injuries which the hospital reported to DSS as being caused by child abuse. In March, 1984, Randy DeShaney beat Joshua so severely that he fell into a life-threatening coma. Joshua and his mother then filed suit against Winnebago County, DSS and various employees of DSS.

The Supreme Court, in rejecting the DeShaneys' § 1983 claim, stated that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors . . . Its purpose was to protect the people from the State, not to ensure that the State protected them from each other." *DeShaney*, 489 U.S. at 195–196, 109 S.Ct. at 1002–1003. The Court further rejected the DeShaneys' contention that a special relationship existed between the state and Joshua. The DeShaneys argued that a special relationship existed because the State knew that Joshua faced a special danger of abuse at his father's hands, and specifically proclaimed its intention to protect Joshua against that danger. *Id.* at 197, 109 S.Ct. at 1003.

1. Defendants' argument that the Complaint does not adequately delineate a constitutional right that has been violated and that Defendants are unable to frame a sufficient answer and appropriately address the allegations against them must therefore be rejected. Clearly, a person

enjoys a "general liberty interest, secured by the Fourteenth Amendment, to be free from unjustified physical assaults upon her person." *Davis v. Fulton County, Ark.*, 884 F.Supp. 1245 (E.D.Ark. 1995).

The Court, in holding that absent a special relationship the State had no constitutional duty to protect Joshua against his father's violence, recognized that there are "certain limited circumstances [whereby] the Constitution imposes upon the State affirmative duties of care and protection with respect to certain individuals." *Id.* at 198, 109 S.Ct. at 1004. The circumstances recognized by the Court, however, were described as those when "the State takes a person into its custody and holds him there against his will." *Id.* at 199–200, 109 S.Ct. at 1005–1006.[2] The Court reasoned, "The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.* at 200, 109 S.Ct. at 1005. Finally, the Court stated that simply because "the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter." *Id.* at 201, 109 S.Ct. at 1006.

▮ Ford first argues that a special relationship has been established which may form the basis of liability on the part of Defendants. Although Ford attempts to factually distinguish *DeShaney* from the case at bar, we believe that the holding of *DeShaney* clearly precludes a finding, under the facts as alleged by Ford, that a special relationship existed between Shawntee and Defendants at the time she was killed by her father. Ford may therefore not proceed, based on the holding of *DeShaney*, on her special relationship theory.

Ford next argues that "the actions and inaction of CYS unnecessarily exposed Shawntee to extreme danger." (Plaintiff's Brief, p. 14) Ford relies on a "state-created danger" theory alluded to in *DeShaney* and discussed in *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1152 (3d Cir.1995) (discussing, but

specifically reserving decision on whether the Third Circuit recognizes the state-created danger cause of action); *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1373 (3d Cir.1992); *Johnson v. Dallas Independent Sch. Dist.*, 38 F.3d 198, 200 (5th Cir.1994); *K.H. ex rel. Murphy v. Morgan*, 914 F.2d 846 (7th Cir. 1990); and *Cornelius v. Town of Highland Lake Ala.*, 880 F.2d 348 (11th Cir.1989). With respect to the facts alleged in the Complaint, Ford claims in her brief that she has alleged facts sufficient to state a state-created danger theory because CYS failed to investigate Booker's circumstances, and failed to report known information to the Juvenile Court concerning, *inter alia*, the existence of an outstanding Protection from Abuse Order which enjoined Booker from having any contact with his then live-in girlfriend, which would have disqualified Booker from acting as Shawntee's custodian, thereby subjecting Shawntee to increased risk of harm. (Plaintiff's Brief, p. 14)

Ford also argues, with respect to County Defendants Thomas J. Foerster, Pete Flaherty, Larry Dunn, and Allegheny County, that "the constitutional deprivation experienced by Shawntee was directly caused by agency policy that resulted from among other deficiencies, the inadequate training of its personnel." (Plaintiff's Brief, p. 15) Defendants argue, in their reply brief, that "the linchpin in imposing liability in [the context of special relationship and state-created danger] is that the violation itself was created by state actors, not private citizens." (Defendants' Reply Brief, p. 6–7)

▮ I begin my analysis with a review of the state-created danger theory. Some courts have stated that when state actors knowingly place a person in danger, the state actors may be liable for foreseeable injuries that result from their conduct, whether or not the victim was in formal state custody. *Johnson*, 38 F.3d at 200 (student shot and killed at school by a non-student); *Wood v. Ostrander*, 879 F.2d 583 (9th Cir.1989) (female passenger raped after police officer im-

---

**2.** *Compare D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1381

(3d Cir.1992) (Sloviter, C.J. dissenting).

pounded the vehicle in which she was a passenger and left her alone in a high-crime area); *Cornelius*, 880 F.2d 348 (municipal employee abducted and held hostage for three days by two prisoners—one of whom had a violent criminal history—who had been allowed by the state to participate in a work-release program at a municipal town hall); *K.H. ex rel. Murphy*, 914 F.2d 846 (child abused by foster parents). In each of these cases, "the courts uniformly [have] held that state actors may be liable if they created the plaintiffs' peril, increased their risk of harm, or acted to render them more vulnerable to danger." *Johnson*, 38 F.3d at 200. I emphasize, however, that the Third Circuit, while discussing the state-created danger theory, has carefully avoided adopting it as a viable theory of constitutional recovery. *See Mark*, 51 F.3d at 1152.

The rationale behind the state-created danger theory generally has been expressed that "[i]f the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit." *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir.1982) cited in *Wood*, 879 F.2d at 594. In order to prove liability under the state-created danger theory, "the environment created by the state actors must be dangerous; they must know it to be dangerous; and ... they must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur. Put otherwise, the defendants must have been at least deliberately indifferent [3] to the plight of the plaintiff." *Mark*, 51 F.3d at 1152, citing *Johnson*, supra.

The Third Circuit, in *Mark*, observed that the state-created danger cases decided to date generally have four things in common: (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur. *Mark*, 51 F.3d at 1152.

Although the state-created danger theory has been clearly recognized when the State fails to protect children in foster homes from mistreatment at the hands of their foster parents, *K.H. ex rel. Murphy*, 914 F.2d at 852; *DeShaney*, 489 U.S. at 201 fn. 9, 109 S.Ct. at 1006 fn. 9, I have found no cases recognizing the state-created danger theory when the mistreatment comes at the hands of the child's parent, as presented in this case. In fact, the Seventh Circuit in *K.H. ex rel. Murphy*, specifically pointed out that

"there is ... a difference between placing a child with a member of her family and placing the child with a foster parent ... State employees who withhold a child from her family run the risk of being sued by the family for infringing their liberty of familial association ... and we do not want to place child welfare workers on a razor's edge—damned if they return the child to its family and damned if they retain custody of the child or place him in a foster home or institution."

*Id.* at 852–53 (internal citation omitted).

However, I find the concern voiced by the Seventh Circuit in *K.H. ex rel. Murphy* unpersuasive. The fact that the child is placed with a parent as opposed to a foster parent should not change the standards by which social agencies and their employees conduct their investigations. It is important to remember that in the case at bar, Shawntee had not been in the custody of her father, but, rather, had been in the custody of CYS and was placed with her father by the court after a CYS investigation and recommendation.

After carefully reviewing the Complaint, I find, viewing all facts in the light most favorable to Ford, that to the extent that the Third Circuit would recognize the state-created danger theory as a viable theory of constitutional recovery, Ford has alleged sufficient facts to establish a prima facie case of state-created danger. I therefore will deny

---

**3.** I do not decide the appropriate standard of conduct that governs this cause of action for the purpose of this motion.

Defendants' Motion to Dismiss with respect to this claim.

While Plaintiff addresses the issue of the liability of the agencies and policymakers in her brief, Defendants do not raise this issue in their motion and absent complete briefing, we will not address the issue at this time. Defendants may, however, raise the issue at summary judgment regarding whether Plaintiff has sustained a cause of action against the agencies and policymakers for § 1983 liability. *See e.g. Brown v. Grabowski,* 922 F.2d 1097, 1119–20 (3d Cir.1990).

Although Ford has attached documents in support of her motion, we will not consider these submissions for the purpose of deciding this motion to dismiss. *See* Fed.R.Civ.P. 12(b) ("If, on a motion asserting the defense numbered (6) . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . .)".

■ Finally, we address Defendants' claims of immunity for the pendent state-law claims. As previously stated, Ford "concedes that no set of facts can be alleged to establish pendant [sic] state law claims against the agency defendants under these statutes because of the bar of government immunity . . ." (Plaintiff's Brief, p. 18) Ford's state law claims against Allegheny County, CYS, and the Allegheny County Institution District will therefore be dismissed. Plaintiff argues, however, that the state-law claims against all individual County Defendants may be maintained under 42 Pa.Cons. Stat.Ann. § 8550 (willful misconduct) because she has alleged gross negligence which "has been legislatively defined in Pennsylvania as reckless, willful or wanton misconduct. 42 Pa.C.S.A. § 8336(d) . . ." (Plaintiff's Brief, p. 19) To the extent that Plaintiff alleges acts of willful misconduct on the part of CYS Defendants Johnson, Petras, Flowers, Freeland, and County Defendants Foerster, Flaherty and Dunn, we will deny Defendants' Motion to Dismiss.

## II. Motion for Summary Judgment

After filing their Answers, the City of Pittsburgh and the police Defendants, apparently inspired by the CYS and County Defendants' Motion to Dismiss, and having failed to file their own motion to dismiss, have attempted to raise the *DeShaney* issue in a motion for summary judgment filed before the close of discovery.

■ Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Rule 56 mandates the entry of summary judgment, *after adequate time for discovery and upon motion,* against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (emphasis added).

Plaintiff contends in her Brief in Opposition to Summary Judgment that "the municipal defendants have relied wholly upon *DeShaney* . . . for the proposition that this case should be dismissed . . . [h]owever, *DeShaney* does not apply as Plaintiff's constitutional cause of action against the municipal defendants is derived from the procedural protections of the Fourteenth Amendment, i.e. deprivation of decedent's due process right to be afforded equality in treatment under state law . . . [thus] the finding of a 'special relationship' between decedent and municipal defendants is unnecessary." (Plaintiff's Brief, p. 10) With that statement in mind, I find that Defendants' Motion for Summary Judgment is premature. The parties have not had an adequate time to conduct discovery. I will therefore not address any of the arguments made by the City of Pittsburgh or the police Defendants at this time. The City of Pittsburgh and the police Defendants may raise any *relevant* issues in a motion for summary judgment at the close of discovery.

## *ORDER OF COURT*

**AND NOW,** this **26th** day of September, 1995, after careful consideration and for the

reasons set forth in the Opinion accompanying this Order, the following Order is **ENTERED:**

1. The Motion to Dismiss (Docket # : 23), filed by Defendants Johnson; Petras; Flowers; Freeland; CYS; the Allegheny County Institution District; Foerster, Flaherty and Dunn (in their capacity as Executive and Administrative Officers of the Allegheny County Institution District); Allegheny County; Foerster, Flaherty and Dunn (in their capacity as Allegheny County Board of Commissioners); and Foerster, Flaherty and Dunn, as individuals, with regard to Plaintiff's claim under 42 U.S.C. § 1983, based on a "special relationship" theory of liability is **GRANTED;** the Motion to Dismiss filed by the same Defendants with regard to Plaintiff's claim under 42 U.S.C. § 1983, based on a "state-created danger" theory of liability, is **DENIED.**

2. The Motion to Dismiss (Docket # : 23) filed by Defendants Johnson; Petras; Flowers; Freeland; CYS; the Allegheny County Institution District; Foerster, Flaherty and Dunn (in their capacity as Executive and Administrative Officers of the Allegheny County Institution District); Allegheny County; Foerster, Flaherty and Dunn (in their capacity as Allegheny County Board of Commissioners); and Foerster, Flaherty and Dunn, as individuals, with regard to Plaintiff's claims for violations of Shawntee Ford's Eighth and Fourteenth Amendment rights is **GRANTED.**

3. The Motion to Dismiss (Docket # : 23) filed by Defendants Johnson; Petras; Flowers; Freeland; CYS; the Allegheny County Institution District; Foerster, Flaherty and Dunn (in their capacity as Executive and Administrative Officers of the Allegheny County Institution District); Allegheny County; Foerster, Flaherty and Dunn (in their capacity as Allegheny County Board of Commissioners); and Foerster, Flaherty and Dunn, as individuals, with regard to Plaintiff's claims based upon 42 U.S.C. § 601 *et seq.* and 45 C.F.R. § 233 *et seq.* is **GRANTED.**

4. The Motion to Dismiss (Docket # : 23) filed by Defendants Allegheny County; CYS; and the Allegheny County Institution District with regard to Plaintiff's state law claims is **GRANTED.**

5. The Motion to Dismiss (Docket # : 23) filed by Defendants Johnson; Petras; Flowers; Freeland; Foerster, Flaherty and Dunn (in their capacity as Executive and Administrative Officers of the Allegheny County Institution District); Foerster, Flaherty and Dunn (in their capacity as the Allegheny County Board of Commissioners); and Foerster, Flaherty and Dunn, as individuals, with regard to Plaintiff's state law claims based upon 42 Pa.Cons.Stat.Ann. § 8550 (willful misconduct) is **DENIED.**

6. The Motion for Summary Judgment (Docket # : 38) filed by Defendants City of Pittsburgh; Jeffrey Brady and Robert Swartzwelder, as individuals and in their capacities as police officers of the City of Pittsburgh; Gwendolyn J. Elliott, individually and in her capacity as Police Commander for the City of Pittsburgh; and Earl Buford, individually and in his capacity as Chief of Police for the City of Pittsburgh is **DENIED** without prejudice to reinstitute after the close of discovery.

It is further **ORDERED** that a Status Conference is scheduled for Wednesday, October 11, 1995, at 9:00 A.M. before the undersigned. All counsel must be present with the authority to settle.