**PATTON ELECTRIC COMPANY, INC., Plaintiff,**

v.

**RAMPART AIR, INC., and Connelly/Osth & Co., Defendants.**

Civ. No. F 90–177.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Sept. 30, 1991.

Donald F. Strutz, J. Frank Kimbrough, Thomas L. Wooding, Wilks & Kimbrough, Fort Wayne, Ind., for plaintiff.

John W. Havins, Houston, Tex., for defendants.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on Defendants Rampart Air and Connelly/Osth & Co.'s[1] motion to dismiss under Rule 12(b)(6) and on Defendant Rampart Air's motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure. Also before the court is plaintiff's motion for default judgment under Rule 55(a).

### Factual Background

In September 1988, Rampart Air, Inc., a Texas corporation, and Patton Electric Company, Inc., an Indiana corporation, entered into a series of agreements in connection with Patton's purchase of certain of Rampart's assets. These agreements in-

---

**1.** In the filings to the court, Connelly/Osth is often referred to as Connelly/Osth. In this order, the court adopts the spelling that is on the complaint: Connelly/Osth.

cluded an Asset Purchase Agreement, a License Agreement, and a Sales Representative Agreement. A feature of the asset purchase transaction was Patton's agreement to pay ten percent commission in connection with sales of fans to W.W. Grainger & Co. and several other companies that were on Rampart's customer list. This ten percent commission was to be divided between Rampart and Connelly/Osth & Co., Rampart's sales agent, with Rampart receiving a six and one-half percent commission and Connelly/Osth receiving a three and one-half percent commission. However, as a result of Patton's direct competition with some of W.W. Grainger's fans, W.W. Grainger canceled purchase orders that it had previously placed and refused to place any additional orders with Patton.

Rampart Air and Connelly/Osth, by attorney John W. Havins, corresponded with Patton Electric on July 11, 1990 and informed Patton that Rampart Air and Connelly/Osth had lost commissions in the amount of at least $250,000. Havins demanded that Patton compensate his clients for the lost commissions or his clients would file a lawsuit in Texas against Patton. Throughout the month of August, 1990 the parties engaged in settlement negotiations. After not hearing from Mr. Strutz, Patton's attorney, for some time, but believing that Patton was still pursuing settlement negotiations, Mr. Havins telephoned Mr. Strutz on September 20, 1990 to inquire whether Patton had made a decision regarding settlement. Mr. Strutz advised Mr. Havins that Patton did not wish to settle and that Patton did not want to be sued in Texas. Mr. Strutz concluded by stating that Patton intended to file a declaratory action in federal court. Mr. Strutz failed to advise Mr. Havins that Patton had already filed its declaratory judgment action in this court on September 18, 1990. After learning that Patton did not intend to settle this dispute, Rampart and Connelly/Osth filed suit against Patton in the 215th District Court of Harris County, Texas on September 21, 1990.

On September 18, 1990 Patton filed with this court a "Complaint for Declaratory Judgment and Damages" against the defendants. In this complaint Patton claims that there is no provision in either the Asset Purchase Agreement or the Sales Representative Agreement prohibiting plaintiff from continuing to compete with W.W. Grainger Co., or with any of the other prospective customers to which defendants Rampart Air and Connelly/Osth anticipated selling products to pursuant to the Sales Representative Agreement. Patton further claims that defendants' threatened litigation in Texas is a spurious complaint contrived by the defendants to compel Patton to pay the defendants $449,550. In its prayer for relief, Patton seeks "a Declaratory Judgment in favor of the plaintiff against these defendants" and an "award of damages including attorneys fees, with punitive damages for defendants threatening to bring this spurious litigation in Harris County, Texas, in an amount to be determined by the Court...."

On October 29, 1990 defendants filed their motions to dismiss. On December 17, 1990, Patton filed an amended complaint entitled "First Amended Complaint for Damages for Fraud in the Inducement of a Contract, For Damages for Attempted Extortion by Use of the U.S. Mail, For Recision of a Contract/or Declaratory Judgment". Also on December 17, 1990 Patton filed its opposition to the defendants' 12(b)(6) motion to dismiss.

On February 7, 1991 the court held a hearing on defendants' motions to dismiss and ordered the attorneys to file further briefs addressing the issues raised by the motions including the issue of whether Patton's amended complaint "relates back" to the filing of Patton's original complaint.

### Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6)

In their Rule 12(b)(6) motion to dismiss,[2] defendants have asked the court to dismiss

---

**2.** In briefing this motion, both parties have submitted matters outside of the pleadings, which the court has considered. Pursuant to Rule

12(b) the court will treat the motion to dismiss as one for summary judgment under Rule 56. By order dated September 12, 1991, this court

the plaintiff's complaint because plaintiff has purposefully misused the Declaratory Judgment Act to gain a tactical advantage for itself. Defendants claim that plaintiff filed its declaratory judgment action in anticipation of defendants filing a lawsuit in Texas against plaintiff. Defendants assert that by misusing the Declaratory Judgment Act, plaintiff has deprived the defendants of the right to choose the forum in which to pursue their claims against plaintiff.

In opposition, Patton argues that its suit against defendants has not been brought solely to obtain a declaratory judgment but that the main thrust of Patton's original complaint filed on September 18, 1990 was to recover actual and punitive damages for defendants' attempted extortion of $449,-550 from plaintiff. Patton further argues that its First Amended Complaint includes a request for actual and punitive damages arising from defendants' alleged fraud in the inducement and alleged rescission of contract.

Patton's filing of an amended complaint raises the issue of whether that amended complaint "relates back" to the date of the filing of the original complaint. Rule 15(c) provides in pertinent part:

> **(c) Relation Back of Amendments.** Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

Defendants claim that Patton is not entitled to the benefit of the relation back doctrine because the conduct, transaction or occurrence forming the basis of the claim asserted in Patton's amended pleading was not set forth in the original pleading. Specifically, defendants argue that Patton's original complaint does not give the defendants fair notice that damage claims exist.

Patton claims that its First Amended Complaint does relate back to the filing date of its original complaint because the same transaction/occurrence is involved; specifically, the representations prior to, and the performance under, the Asset Purchase Agreement and the Sales Representative Agreement.

■ A review of the plaintiff's original complaint and amended complaint reveals that the original complaint is centered around the parties' Asset Purchase Agreement and plaintiff's professed right to issue brochures comparing plaintiff's fans with W.W. Grainger's fans without being haled into a Texas court and forced to defend against a suit brought by Rampart and Connelly/Osth. The amended complaint, however, concerns the defendants' alleged representations to Patton which allegedly induced Patton to enter into the agreement and incur expenses for special packaging, etc. Although Patton's original complaint includes statements that defendants' threatened Texas litigation is "spurious" and "contrived", these statements are clearly made only in support of Patton's request for a declaratory judgment and not in support of a substantive claim that would give rise to damages. It is clear to this court that the claims in the amended complaint do not arise out of the same conduct, transaction, or occurrence set forth in the original complaint. In any event, if Patton does in fact have substantive causes of action arising out of the transaction in which the Asset Purchase Agreement and the Sales Representative Agreement were entered into, Patton will be able to assert these claims as counterclaims in the Texas action. *See* Fed.R.Civ. Pro. 13; *Associated Mills, Inc. v. Regina Co., Inc.,* 675 F.Supp. 446 (N.D.Ill.1987). In their brief filed March 22, 1991, defen-

---

gave the parties reasonable opportunity to present any additional materials in support or opposition of the summary judgment motion. On September 23, 1991 defendants filed an affidavit of Thomas W. Burch, III and an affidavit of John W. Havins. These affidavits and attached exhibits verify the factual sequence of events leading up to the filing of this anticipatory action and of the parallel proceeding in Texas. On September 20, 1991, plaintiff filed an additional memorandum concerning all pending motions, in which it outlined its earlier arguments, but plaintiff did not submit any further evidentiary materials.

dants have informed the court that Patton has filed counterclaims in the Texas case that mirror its claims set forth in the First Amended Complaint.

■ Confining the inquiry to the plaintiff's original complaint, the question before the court is whether plaintiff has purposefully misused the Declaratory Judgment Act which would require the court to dismiss plaintiff's suit for forum shopping. As the Seventh Circuit Court of Appeals held in *Tempco Electric Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746, 749 (7th Cir.1987), the mere fact that a plaintiff filed its declaratory judgment action first does not give it a "right" to choose a forum. At this point it is appropriate to note recent developments of the parallel suit in Texas, which was brought by the defendants in this action against Patton Electric. On August 14, 1991, the Fifth Circuit Court of Appeals vacated the district court's dismissal of the Texas suit. The Fifth Circuit remanded the case to the district court to determine whether the plaintiff in this action filed the anticipatory declaratory action here for purposes of forum shopping. The Fifth Circuit concluded that if Patton filed this suit as an anticipatory declaratory action for purposes of forum shopping, such an act would nullify the first-to-file rule:

Importantly, we have declined to follow the first-to-file rule where, as here, the first-filed action is initiated in an apparent attempt to pre-empt anticipated litigation and deprive a party of its choice of forum. For example, in *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 n. 3 (5th Cir.1983), noting that "[a]nticipatory suits are disfavored because they are an aspect of forum-shopping," we affirmed the dismissal of a declaratory judgment suit filed approximately three weeks before the institution of a suit in another state. There, as here, the first suit was filed while, at least ostensibly, the parties were working together to determine their respective positions regarding the dispute at hand. The principle of avoiding anticipatory lawsuits is especially strong where, as here, the first-filed suit is one for declaratory judgment. "[A] proper factor to consider in dismissing a declaratory judgment is whether the suit was filed in anticipation of another and therefore was being used for the purpose of forum-shopping." *Pacific Employers Ins. Co. v. M/V CAPTAIN W.D. CARGILL*, 751 F.2d 801, 804 (5th Cir.), *cert. denied*, 474 U.S. 909, 106 S.Ct. 279, 88 L.Ed.2d 244 (1985) (citing *Mission Ins.*, 706 F.2d at 602 & n. 3; *Ven–Fuel, Inc. v. Dep't of the Treasury*, 673 F.2d 1194, 1195 (11th Cir.1982)).

*Rampart Air, Inc. v. Patton Electric, Inc.*, No. 91-2312, slip op. at 4-5 (5th Cir. Aug. 14, 1991) [942 F.2d 786 (table) ] (per curiam).

Since the Fifth Circuit vacated the district court's dismissal of the Texas suit, there is currently a parallel case pending in the Texas federal court. This court will not allow Patton to prevent defendants from litigating in the forum of their choice simply because Patton won the race to the courthouse by three days. Any other result would create disincentives to responsible litigation. As Judge Lasker of the District Court for the Southern District of New York wisely noted:

As federal court calendars become increasingly burdened, attorneys should exercise a correspondingly increased responsibility to attempt to resolve disputes without using limited judicial resources to decide issues which might, by responsible discussions between reasonable people, be settled out of court. Potential plaintiffs should be encouraged to attempt settlement discussions (in good faith and with dispatch) prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing before plaintiff files an already drafted complaint. (Citations omitted).

*Columbia Pictures Industries, Inc. v. Schneider*, 435 F.Supp. 742, 747–48 (S.D.N.Y.1977).

Additionally, it appears to the court that Patton's suit is probably not a proper de-

claratory judgment action in any event. The Declaratory Judgment Act was designed to "avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued." *Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1168 (7th Cir.1969); *Casad Ry. Services, Inc. v. Union Pacific R. Co.*, 659 F.Supp. 123, 126 (N.D.Ind.1987). In this case, the damage had already accrued to Rampart and Connelly/Osth as Patton's acts had, at least allegedly, resulted in W.W. Grainger's cancellation of purchase orders. Also, Patton did not need to file this action in order to obtain an early adjudication of its rights; Rampart and Connelly/Osth were prepared to file suit immediately if negotiations proved to be unfruitful. Patton was fully aware of the defendants' intentions as it had asked for and received a copy of defendants' complaint which they intended to file in Harris County, Texas if Patton did not respond to defendants' demands.

Furthermore, as will be discussed below, there is a substantial question whether this court has jurisdiction over all of these defendants while it is clear that the federal district court in Texas has personal jurisdiction over all the parties to this litigation and Texas is the more appropriate forum for resolution of these claims.

Consequently, for all of the above reasons, this court will not adhere to the first-to-file rule and will grant summary judgment in favor of the defendants.

### Rampart's Motion to Dismiss Pursuant to Rule 12(b)(2)

█ In its Rule 12(b)(2) motion to dismiss Rampart claims that it is a Texas

corporation that has had extremely limited contacts with the State of Indiana and those limited contacts did not give rise to the action which is pending in this court. When a defendant raises lack of personal jurisdiction in a motion to dismiss, the burden is on the plaintiff to demonstrate a basis for the forum court's exercise of personal jurisdiction.[3]

█ In its complaint Patton alleges diversity jurisdiction under 28 U.S.C. § 1332. In diversity cases, this court has jurisdiction over a non-resident defendant, such as Rampart, only if an Indiana court would have jurisdiction. *Scott Turnock v. Cope*, 816 F.2d 332, 334 (7th Cir.1987); *Lakeside Bridge & Steel v. Mountain State Construction Co., Inc.*, 597 F.2d 596 (7th Cir. 1979); *Casad Ry. Services, Inc. v. Union Pacific R. Co.*, 659 F.Supp. 123 (N.D.Ind. 1987). Indiana Rules of Procedure, Trial Rule 4.4, controls the issue of whether a federal court has personal jurisdiction over a non-resident defendant. The pertinent portion of Trial Rule 4.4 states:

(A) ... Any person or organization that is a nonresident of this state, ... submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or his agent:

(1) doing any business in this state;

\* \* \* \* \* \*

(4) having supplied or contracted to supply services rendered or to be rendered or goods or materials furnished or to be furnished in this state.

Trial Rule 4.4(A) is applicable to federal courts located in Indiana when the federal courts are sitting in diversity. This rule is

---

3. On October 29, 1990, defendant Rampart Air, Inc. filed a motion to dismiss pursuant to Rule 12(b)(2). The brief in support of this motion discusses Rampart's lack of contacts with Indiana. The motion and brief do not purport to be asserting that this court does not have personal jurisdiction over defendant Connelly/Osth. Nonetheless, in its response brief, filed March 7, 1991, plaintiff treats Rampart's motion to dismiss as if it was filed on behalf of both defendants and plaintiff argues that this court has jurisdiction over both defendants.

However, since only one defendant, Rampart, filed a Rule 12(b)(2) motion to dismiss, and defendant Connelly/Osth has never stated that it intended to adopt Rampart's motion, the court will proceed as if personal jurisdiction over defendant Connelly/Osth has not been questioned. It would be unfair to expect plaintiff to bear the burden of proving a basis for personal jurisdiction over Connelly/Osth if Connelly/Osth has never raised the issue of lack of personal jurisdiction.

intended to extend personal jurisdiction to the extent allowed by due process. *Nu-Way Systems v. Belmont Marketing*, 635 F.2d 617 (7th Cir.1980).

 Due process requires that a trial court acquire personal jurisdiction over a non-resident defendant before it renders a judgment against that defendant. *Kulko v. California Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). Before a court can exercise personal jurisdiction it must determine that "minimum contacts" exist between the foreign state and the non-resident defendant, which comport with due process. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Minimum contacts exist when maintenance of the suit in question "does not offend 'traditional notions of fair play and substantial justice'" *Id.* quoting *Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940). A district court must determine whether it is reasonable, due to the non-resident defendant's conduct in connection with the forum state, for the non-resident defendant to anticipate being haled into court in the forum state. *World Wide Volkswagen Corp v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Due process requires that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

 The court must also determine whether the non-resident defendant purposely availed himself or itself of the privilege of conducting activities within the forum state. *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). The test for minimum contacts is flexible and necessarily dependent upon the facts of each case with particular attention being given to the nature and quality of the contacts. *Lakeside*, 597 F.2d at 596.

In *Burger King*, the Supreme Court determined that the factors to be considered when determining whether the exercise of personal jurisdiction comports with "fair play and substantive justice" include: (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering substantive social policies.

 This court may exercise jurisdiction over non-resident defendants if the court has either specific or general jurisdiction over the defendants. Specific jurisdiction exists when the defendant's contacts with the forum are related to the controversy and those contacts reach a "minimum" threshold. *International Shoe Co. v. Washington*, 66 S.Ct. at 158. If the controversy does not arise out of the defendant's contacts with the forum, the court may exercise general jurisdiction if the defendant has "continuous and systematic" contacts with the forum, even though those contacts have no relation to the underlying controversy. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

Specific jurisdiction requires only a minimum of contacts, but also requires the controversy to be "related" in some way to the defendant's contact with the forum. General jurisdiction requires a greater amount of contacts, but permits the court to include in its analysis contacts that have absolutely no relationship to the underlying dispute.

Rampart argues that it is a Texas corporation and that it would place a tremendous burden on the company and its representatives if they were forced to travel to Indiana to defend this action and that, moreover, it would reward Patton for its deceptive misuse of the federal Declaratory Judgment Act. In response, Patton insists that its First Amended Complaint clearly establishes Rampart's "minimum contacts" with Indiana. Patton lists the following contacts:

(1) The Agreements in question were made with an Indiana corporation, whose offices and manufacturing facilities are located in New Haven, Indiana.

(2) The Sales Representative Agreement clearly contemplates a continuing course of business by Defendants to supply services to and make money from Plaintiff in Indiana.

(3) As to Defendants' purported sales orders from W.W. Grainger, performance by Plaintiff in Indiana was not only contemplated, but in fact occurred and as a result, Plaintiff suffered out-of-pocket damages in Indiana.

(4) There were continued representations of Rampart and Connelly/Osth to Plaintiff in Indiana that the Grainger purchase orders would soon be forthcoming.

(5) On January 5, 1989, there was a visit by Connelly/Osth, on Rampart's behalf, to Indiana; specifically, Connelly/Osth came to Plaintiff's manufacturing facilities in New Haven, Indiana, accompanied by an engineer from Grainger, to discuss the packaging design for Grainger's forthcoming orders.

Rampart, however, claims that the facts before this court are as follows:

(1) In September 1988, Harold J. Hertenstein and James Cich, President of Patton Electric, Inc., traveled to Houston, Texas for the purpose of negotiating, and did negotiate, the terms and conditions for the Asset Purchase Agreement, the License Agreement and the Sales Representative Agreement.

(2) The parties executed the Asset Purchase Agreement, the License Agreement and the Sales Representative Agreement in Houston, Texas.

(3) Plaintiff claims that fraudulent misrepresentations were made during the negotiations in Houston, Texas.

(4) Plaintiff retained a Houston, Texas law firm to draft the agreements and to represent its interests in connection with the purchase of assets from Rampart.

(5) Article VII, Section 7.6 of the Asset Purchase Agreement provides that the Asset Purchase Agreement will be governed by and construed in accordance with the substantive laws of the State of Texas.

(6) Prior to September 1988 Rampart Air, Inc. had only sporadic contacts with the State of Indiana, and these contacts were limited to filling purchase orders.

(7) Since September 1988 Rampart Air, Inc. has not had any contact with the State of Indiana.

(8) Rampart Air, Inc. does not own either realty or personalty that is situated in the State of Indiana.

Plaintiff has submitted a supplemental brief, with affidavits, in which it claims it has demonstrated that Rampart had sufficient "minimum contacts" with Indiana. Plaintiff directs the court to the following facts:

(1) Although the Asset Purchase Agreement was executed in Texas, the parties intended that the equipment purchased from Rampart be moved to and installed in Patton's manufacturing facility in New Haven, Indiana and the equipment was in fact installed in Indiana.

(2) Although the Sales Representative Agreement was executed in Texas, the parties intended that any fans, ordered through Rampart by W.W. Grainger Co., or other Rampart customers, would be produced at Patton's manufacturing facility in New Haven, Indiana and the fans were in fact produced in Indiana.

(3) During the month of August 1988, after plaintiff's purchase of the assets of Rampart, Rampart sent its plant manager, Jimmy Gawlik, to New Haven, Indiana as a representative of Rampart for the express purpose of instructing the plaintiff in the setting up of its purchased equipment, and to obtain cost reductions in the operation of the equipment for the manufacture of the fan models which plaintiff had purchased from Rampart to be used in filling W.W. Grainger Co.'s orders.

(4) Rampart also sent two of its technicians, Orville Mallory and Donald Phillips, to assist in the assembly of the equipment necessary for the manufacture of the fans for W.W. Grainger Co., who spent three weeks in Patton's plant in New Haven, Indiana.

(5) During the month of December, 1988, Terry Connelly of defendant Connelly/Osth, called Harold Hertenstein, Gen-

eral Manager Industrial Division of Patton Electric, for the purpose of setting up an appointment to bring a representative of W.W. Grainger Co. to New Haven, Indiana. On January 5, 1989 Terry Connelly arrived in New Haven with J. Wente, engineer for W.W. Grainger Co. who met all day with Hertenstein and Paul Glowacki, a Patton engineer, and worked on the customized packaging arrangements needed to accommodate the shipment of fans to W.W. Grainger Co. (6) Thereafter, long distance telephone conferences continued frequently between Hertenstein in New Haven, Indiana and Charles B. Swank and Patrick Huffstutter in Houston, Texas in the furtherance of preparation of the fans to be shipped to W.W. Grainger in March 1989.

Defendants have also submitted a supplemental brief in which they clarify plaintiff's statements regarding "minimum contacts" as follows:

(1) After Patton purchased the assets of Rampart, Jimmy Gawlick, Orville Mallory and Donald Phillips did spend time at Patton's facility to assist Patton, but did so at the request and expense of Patton. During the time that these individuals were working at Patton's facility, they were doing so as consultants to Patton and not as employees or representatives of Rampart.

(2) At the time Terry Connelly visited Patton's facility in December 1988, he was acting as the agent of Connelly/Osth.

█ A complete review of the record indicates that this court does not have either specific or general jurisdiction over Rampart. Rampart had extremely limited contact with Indiana prior to September 1988 and these contacts were not related to the present controversy. Rampart has had no contact with Indiana since September 1988. Likewise, Rampart has never had "continuous and systematic" contact with Indiana such that would render general jurisdiction over Rampart appropriate.

█ Furthermore, a consideration of the five factors enumerated in *Burger*

*King, supra,* indicates that Texas is the appropriate forum for resolving this dispute. First, the burden on the defendant would be great. Second, Indiana has little interest in adjudicating this dispute, which clearly arose in Texas and is to be controlled by Texas law. Third, the plaintiff's interest in obtaining convenient and effective relief is minimal due to plaintiff's failure to negotiate in good faith and plaintiff's act of attempting to "steal the forum." Fourth, the interstate judicial system's interest in obtaining the most efficient resolution of this controversy will be best served if this case is resolved in Texas where the dispute arose. And fifth, the shared interest of the states in furthering substantive social policies will be served by thwarting plaintiff's attempt to engage in forum-shopping. Consequently, the court will grant Rampart's motion to dismiss for lack of personal jurisdiction.

### Plaintiff's Motion for Default Judgment

█ Patton has moved for a default judgment on its first amended complaint pursuant to Fed.R.Civ.Pro. 55(a). Patton argues that the defendants have failed to answer, or otherwise timely respond to, Patton's amended complaint. Defendants, however, contend that they have filed several motions pursuant to Rule 12(b) and therefore have clearly "defended" themselves for purposes of Rule 55. Wright & Miller, in their treatise on federal practice and procedure, discuss this type of situation as follows:

A pleading that has been amended under Rule 15(a) supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified. Once an amended pleading is interposed, the original pleading no longer performs any function in the case and any subsequent motion made by an opposing party should be directed at the amended pleading. This effect of an amended pleading under Rule 15(a) becomes particularly important when the amendment purports to cure a defective earlier pleading. For example, plaintiff may file a new complaint that does not

refer to or adopt any of the deficient allegations in the original pleading; if the first complaint is considered superseded by the amendment, the court is not required to dismiss the suit when a motion points up the weaknesses of the earlier pleading. On the other hand, defendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading. To hold otherwise would be to exalt form over substance.

6 Wright, Miller & Kane, *Federal Practice and Procedure*, § 1476 at 556–58 (2d ed. 1990).

Since Patton's First Amended Complaint suffers from the same deficiencies that are addressed in defendants' motions to dismiss which were directed to Patton's original complaint, the court finds that the defendants have "otherwise defended" for purposes of Rule 55. Accordingly, plaintiff's motion for default judgment will be denied.

## Conclusion

For the foregoing reasons, defendants Rampart Air and Connelly/Osth & Co.'s motion for summary judgment is hereby GRANTED. Further, Rampart Air's motion to dismiss pursuant to Rule 12(b)(2) is hereby GRANTED.