Constance **JORDAN, et al.,**

v.

**CITY OF PHILADELPHIA, et al.**

No. Civ.A. 99–0016.

United States District Court,
E.D. Pennsylvania.

Sept. 14, 1999.

640

Stephen A. Seidel, Law Offices of Stephen A. Seidel, Philadelphia, PA, Phyllis J. Powers, Philadelphia, PA, for Plaintiffs.

Juhwon Lee, Asst. City Solicitor, Philadelphia, PA, Jeffrey M. Scott, City Solicitor's Office, City of Philadelphia Law Dept., Philadelphia, PA, Adrian J. Moody, Law Offices of Adrian Moody, P.C., Philadelphia, PA, Catherine S. Straggas, Margolis Edelstein, Philadelphia, PA, Jay E. Mintzer, Mintzer & Sarowitz, Philadelphia, PA, for Defendants.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

This 42 U.S.C. § 1983 action was brought by plaintiffs, Constance Jordan, Myeshia Jordan, and Nickie Jordan against defendants, the City of Philadelphia ("Philadelphia"), Department of Human Services of the City of Philadelphia ("DHS"), Valerie Mack, Children and Youth Division of the Department of Human Services of the City of Philadelphia, Marlene H. Rivers ("Rivers"), Tinea Mimms ("Mimms"), and the Women's Christian Alliance ("WCA"), Roslyn Mosely, Frank and Lois Crawford, and Joel Crawford. Before the Court is the motion

of defendants Rivers, Mimms, and WCA to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion shall be granted in part and denied in part.

### Factual Background

Plaintiffs are three sisters who were placed in the foster home of Frank and Lois Crawford by the DHS in September 1987. The Crawfords were selected as foster parents by WCA, an agency which contracts with the DHS to provide foster care. Rivers has been the Executive Director of the WCA. Mimms has been employed by the WCA. Plaintiffs allege they were subjected to numerous instances of forced sexual activity by the Crawfords' teenage son.

On January 5, 1999 plaintiffs filed suit. They amended the complaint on February 22, 1999. On February 24, 1999 defendants, Rivers, Mimms and WCA filed this 12(b)(6) motion.[1]

### Standards Governing 12(b)(6) Motions

It has long been held that the issue of the sufficiency of a pleading may be raised by the filing of a 12(b)(6) motion to dismiss. In resolving a Rule 12(b)(6) motion, the courts are to primarily consider the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3d Cir.1990). In

so doing, the court must accept as true the facts alleged in the complaint, together with all reasonable inferences that can be drawn therefrom and construe them in the light most favorable to the plaintiff. *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990); *Hough/Loew Associates, Inc. v. CLX Realty Co.*, 760 F.Supp. 1141, 1142 (E.D.Pa.1991).

The court's inquiry is directed to whether the allegations set forth by the plaintiff constitute a statement of a claim under Rule 8(a) and whether the plaintiff has a right to any relief based upon the facts pled. Rule 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief . . ." Fed. R.Civ.P. 8(a)(2). The purpose of a "short and plain statement" is to give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *Rannels v. S.E. Nichols, Inc.*, 591 F.2d 242, 245 (3d Cir.1979) (quoting *Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)).

Dismissal under Rule 12(b)(6) for failure to state a claim is therefore limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved. *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir.1988); *Angelastro v. Prudential–Bache Securities, Inc.*, 764 F.2d 939, 944 (3d Cir.1985), *cert. denied*, 474 U.S. 935, 106 S.Ct. 267 (1985).

### Discussion

**I. Assault**

---

**1.** Pursuant to Federal Rule of Civil Procedure 15(a), a party may amend the pleadings once as a matter of course at any time before a responsive pleading is served. The amended complaint is admitted pursuant to Rule 15(a) even if it was filed subsequent to the filing of the defendants' motion to dismiss because the motion to dismiss is not considered a responsive pleading. *Centifanti v. Nix*, 865 F.2d 1422, 1431 n. 9 (3d Cir.1989). Defendants, however, "are not required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in

the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading." 6 Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 1476 at 558 (2nd ed.1990). Since Counts IV through XII of the amended complaint suffer from the same deficiencies that are addressed in defendants' motion to dismiss, the court will allow the motion to dismiss these counts to be considered as addressing the amended complaint. *Patton Elec. Co. v. Rampart Air, Inc.*, 777 F.Supp. 704, 713 (D.C.Ind.1991).

Defendants[2] first move to dismiss the First, Second, and Third Counts of the complaint on the grounds that it lacks sufficient factual allegations to state a claim for assault. Since the amended complaint addresses many of the deficiencies initially alleged in the plaintiffs' complaint, the court will deny Defendants' motion to dismiss Counts I, II and III. *See Sun Co., Inc. v. Badger Design & Constructors,* 939 F.Supp. 365, 367 n. 3 (E.D.Pa.1996); 6 Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 1476 at 556–58 (2d ed. 1990 & Supp.1999).

## II. Intentional Infliction of Emotional Distress

■ Defendants also move to dismiss the claims for emotional suffering and distress which are set forth in the Fourth, Fifth, and Sixth Counts. To bring an intentional infliction of emotional distress claim, the plaintiff must show that the defendant's (1) extreme and outrageous conduct, (2) intentionally or recklessly, (3) caused, (4) severe emotional distress. *Kazatsky v. King David Memorial Park,* 515 Pa. 183, 527 A.2d 988, 991 (1987); *Stouch v. Brothers of Order,* 836 F.Supp. 1134, 1144–1145 (E.D.Pa.1993), citing, *inter alia, Williams v. Guzzardi,* 875 F.2d 46, 51 (3d Cir.1989); Restatement (Second) of Torts § 46.

■ To satisfy the first element of the four-prong test, the conduct must be so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency as to be regarded as atrocious and utterly intolerable in a civilized community. *Stouch, supra.* at 1145; *Malia v. RCA Corporation,* 690 F.Supp. 334, 336 (M.D.Pa.1988); *Rittenhouse Regency Affiliates v. Passen,* 333 Pa.Super. 613, 615, 482 A.2d 1042, 1043 (1984), citing, *inter alia, Martin v. Little, Brown & Co.,* 304 Pa.Super. 424, 432, 450 A.2d 984, 988 (1981); Restatement (Second) of Torts § 46, cmt. d.

■ The role of the court is to determine initially if the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. If reasonable persons may differ, the issue goes to the jury, subject to the control of the court, to determine whether the conduct is sufficiently extreme and outrageous to incur liability. Restatement (Second) of Torts § 46, cmt. h. *See also Gibbs v. Ernst,* 150 Pa.Cmwlth. 154, 164, 615 A.2d 851, 856 (1992), *rev'd, in part, on other grounds,* 538 Pa. 193, 647 A.2d 882 (1994) (finding that determination of whether defendants' failure to disclose vital negative information about plaintiffs constituted outrageous and extreme conduct was an evidentiary question for trier of fact).

Applying these principles of the first prong to the case at hand, we note that WCA was the agency responsible for the selection of the Crawfords as the foster family of the plaintiffs. (Compl. ¶ 14; Am. Compl. ¶ 14). Plaintiffs were involuntarily committed to this foster home (Compl.¶ 27, Am.Compl.¶ 27) and were apparently subject to the authority of the defendants. Plaintiffs aver that defendants knew or should have known prior to the placement that a member of the Crawford family was on a child abuse listing (Compl.¶ 29, Am. Compl.¶ 29). Further, plaintiffs contend that defendants were deliberately indifferent and grossly negligent, especially in light of the fact that defendants were verbally notified by the plaintiffs as to the sexual abuse (Compl. ¶¶ 31, 37; Am. Compl. ¶¶ 31, 37). Accepting the facts alleged as true, we find that plaintiffs' contentions are strong enough to support a finding by the trier of fact that the defendants' actions constituted extreme and outrageous conduct. *Cf. McNeal v. City of Easton,* 143 Pa.Cmwlth. 151, 158, 598 A.2d 638, 641 (1991) (Court held summary judgment proper in favor of defendants on issue of intentional infliction of emotional distress where plaintiff never informed de-

---

**2.** "Defendants" refers to hereinafter the de- fendants, Rivers, Mimms and WCA.

fendants of third-party's conduct and where defendants were not accused directly of any extreme or outrageous conduct).

Second, the plaintiffs carry the burden of proving that the defendants' conduct was intentional or reckless. The word "intent" connotes an actor's desire to cause the consequences of his act, or that he believes that the consequences are substantially certain to occur. Restatement (Second) of Torts, § 8A. In contrast, an actor's conduct is considered in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do. He must know or have reason to know of facts which would lead a reasonable person to realize, not only that his conduct creates an unreasonable risk of harm to another, but also that such risk is greater than that which constitutes only negligent conduct. Restatement (Second) of Torts, § 500.

Applying these principles to the case at hand, and assuming all alleged facts as true, defendants' averred conduct appears to fall within the definition of recklessness. According to plaintiffs, defendants had a duty to the plaintiffs pursuant to federal statutes and they had reason to know of the dangerousness of the Crawford home and of the ongoing instances of sexual abuse against the plaintiffs. Further, reckless conduct has been defined as involving the disregard of, or indifference to, consequences, under circumstances involving danger to life or safety to others, although no harm was intended. Black's Law Dictionary 1270 (6th ed.1990). To a fact-finder, the risk defendants took in not acting on this information may be unreasonable, especially in light of the "easily perceptible danger of death or substantial physical harm" alleged by Plaintiffs. Restatement (Second) of Torts, § 500, cmt. a.

The third prong requires that the defendants' conduct cause the emotional distress. Although plaintiffs state that the Crawfords' son was the direct cause of the harm, the plaintiffs aver that defendants are the proximate cause of the distress due to the breach of their statutory duty to investigate the reported activities in the household (Compl. ¶¶ 76, 79; Am. Compl. ¶¶ 73, 76). We note that the extreme and outrageous conduct required for this tort may arise from an actor who is in a position, or a relation with the other, giving him actual or apparent authority over the other, or power to affect his interests. Restatement (Second) of Torts, § 46, cmt. e. This prong is easily met by plaintiffs' allegations in the complaint.

The fourth prong mandates that the distress be severe. The Restatement addresses the issue of proof of severe emotional distress in comment j to § 46 of the Restatement (Second) of Torts. It states that severe emotional distress may include severe anguish, mental or nervous shock, as well as all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, and nausea. However, these symptoms must be severe for liability to attach. Whether severe emotional distress existed is a question of fact to be decided by a jury. *Hackney v. Woodring*, 424 Pa.Super. 96, 104, 622 A.2d 286, 289 (1993).

In the case at hand, plaintiffs aver that the repeated instances of sexual abuse committed upon them has resulted in extreme emotional distress and psychological damages. Plaintiffs' factual allegations, if presumed true, do substantiate a claim of severe emotional distress. Specifically, the symptoms include nightmares and inability to sleep, anxiety attacks, and occasional fear of male contact and figures of authority. One of the plaintiffs, Nickie Jordan, asserts that due to the denial of her requests for abortions, she incurred the extensive additional cost of delivering two babies (Pl's Compl. 44, Am. Compl. 44).

Given the tragic accounts of the alleged abuse inflicted upon the plaintiffs and the prior and resultant neglect by the responsible defendants, we see no reason to dis-

miss their claim of intentional infliction of emotional distress. Defendants' motion to dismiss Counts IV, V, and VI of the complaint is denied.

### III. Negligence Per Se and Gross Negligence Claims

Defendants also move to dismiss the allegations of negligence per se and gross negligence contained within Counts VII, VIII, and IX. Plaintiffs contend that their negligence per se claim is actionable pursuant to the statutes identified in the complaint which defendants violated. Furthermore, they aver that defendants were grossly negligent in that their conduct went beyond the general negligence standard of ordinary carelessness, laxity, or indifference.

### A. Negligence Per Se

■ A claim of negligence per se arises out of a violation of a statute or regulation that establishes a duty. *Taylor v. Danek Medical, Inc.,* 1998 WL 962062 (E.D.Pa. 1998). Under Pennsylvania law, negligence per se consists of four elements: (1) the purpose of the statute must be, at least in part, to protect the interest of the plaintiff individually, as opposed to the public; (2) the statute or regulation must clearly apply to the conduct of the defendant; (3) the defendant must violate the statute or regulation; and (4) the violation of the statute must proximately cause the plaintiff's injuries. *Cecile Industries, Inc. v. United States,* 793 F.2d 97, 100 (3d Cir. 1986).

■ In the instant case, plaintiffs assert the defendants' violations of both state and federal statutes. The state statute in question, The Child Protective Services Law, 23 Pa.C.S.A. § 6301, et seq., was put into effect to address the urgent need of abused children to have an effective child protection service. *See* 23 Pa.C.S.A. § 6302(a). The Child Protective Services Law was also designed to encourage more complete reporting of suspected child abuse, to establish in each county protective services for the purpose of investigating the reports swiftly and competently, and to provide protection for children from further abuse. *See* 23 Pa.C.S.A. § 6302. Plaintiffs claim that the defendants violated this statute by failing to investigate, supervise, and examine the abuse in the Crawford household (Compl.¶ 89, Am. Compl.¶ 92). Plaintiffs are the clear beneficiaries of this statute. The statute applies to the conduct of the defendants as they were responsible for the safety and welfare of the plaintiffs. The facts alleged do assert that the defendants violated this statute.

Finally, plaintiffs have alleged that defendants violated this statute through their failure to act and that this violation proximately caused the ongoing instances of sexual abuse. Whether a party's conduct was a substantial factor in, and thus the proximate cause of, the injury to another is ordinarily a question of fact for the jury. This evidentiary question should be removed from the jury's consideration only where it is evident that reasonable minds cannot differ on the issue. *Gravlin v. Fredavid Builders & Developers,* 450 Pa.Super. 655, 661, 677 A.2d 1235, 1238 (1996) (citing *Vernon v. Stash,* 367 Pa.Super. 36, 532 A.2d 441, 446 (1987)). We thus find that plaintiffs aver sufficient facts to state a cause of action for negligence per se under the Pennsylvania Child Protective Services Law.[3]

### B. Gross Negligence

■ Defendants also seek dismissal of plaintiffs' gross negligence claims. Specifically, defendants contend that under *Ferrick Excavating and Grading Co. v. Senger Trucking Co.,* 506 Pa. 181, 484 A.2d 744 (1984), no degrees of negligence exist

---

**3.** However, the negligence per se claims that rely on the federal statutes will be dismissed.

*See* (Court's Mem. at 18–23).

in Pennsylvania and the term "gross negligence" refers only to a standard of care. The U.S. Court of Appeals for the Third Circuit recently opined that degrees of negligence are not generally recognized under Pennsylvania common law. *Fialkowski v. Greenwich Home for Children, Inc.*, 921 F.2d 459, 462 (3d Cir.1990). We are compelled to follow the decision set out by the Third Circuit and thus, plaintiffs may proceed with their claims under the general negligence theory with gross negligence as the alleged standard of care violated.

## IV. Section 1983 Claims

Plaintiffs' claims in Counts X through XII against WCA and the individual defendants Rivers and Mimms are founded on plaintiffs' right to sue under 42 U.S.C. § 1983. The statute provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . .

42 U.S.C. § 1983. The Supreme Court has set forth the two essential elements of a § 1983 action: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir.1993) (citing *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)).

### A. Vicarious Liability

WCA moves to dismiss Count XII which alleges that WCA is vicariously liable for the failures of its employees, defendants Rivers and Mimms, to oversee properly the placement of plaintiffs in the foster home of the Crawfords. In cases alleging municipal liability under § 1983, a federal court may not apply a heightened pleading standard that is more stringent than the normal pleading requirement under Federal Rule of Civil Procedure 8(a). *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993). A municipality cannot be held liable under § 1983 on a respondeat superior theory. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Pearson v. Miller*, 988 F.Supp. 848 (M.D.Pa.1997) ("Principles of vicarious liability and respondeat superior do not apply to civil rights claims."). Therefore, defendants' motion to dismiss Count XII of plaintiffs' complaint is granted.

### B. Fifth Amendment

Plaintiffs seek redress for violations of their Fifth Amendment right to due process of law. It is a firmly established principle that Fifth Amendment protection is applicable only when the federal government impinges on a liberty or property interest. *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Bennett v. White*, 865 F.2d 1395, 1406 (3d Cir.1989), *cert. denied*, 492 U.S. 920, 109 S.Ct. 3247, 106 L.Ed.2d 593 (1989). Plaintiffs have alleged no federal action underlying their Fifth Amendment claims. While Plaintiffs have alleged that defendants are state actors who acted under the color of state law due to their contractual relationship with the Department of Human Services of Philadelphia, plaintiffs have not alleged that defendants are officials of the federal government. *Brewer v. Villanova*, 1991 WL 274540 (E.D.Pa.1991). Accordingly, plaintiffs have failed to state a claim upon which

relief can be granted and Defendants' motion to dismiss Counts X and XI pertaining to deprivations of plaintiffs' Fifth Amendment rights will be granted.

## C. Fourteenth Amendment

 Plaintiffs bring a more compelling claim under the substantive due process rights protected by the Fourteenth Amendment. Numerous courts have imposed a constitutional duty to protect foster children by analogy to involuntarily institutionalized individuals. *See, e.g., D.R. by L.R. v. Middle Bucks Area Vocational Technical School,* 972 F.2d 1364, 1372 (3d Cir.1992), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993); *Doe v. New York City Dept. of Social Services,* 649 F.2d 134 (2nd Cir. 1981), after remand, 709 F.2d 782 (2nd Cir.) *cert. denied sub nom., Catholic Home Bureau v. Doe,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); *Taylor By and Through Walker v. Ledbetter,* 818 F.2d 791 (11th Cir.1987), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1337, 103 L.Ed.2d 808 (1989); *Baby Neal v. Casey,* 821 F.Supp. 320, 335 (E.D.Pa.1993). In viewing the substantive due process rights of foster children as akin to that of involuntarily institutionalized individuals, courts recognize the implicit "special relationship" created by the state when they take children from their natural parents and place them in foster homes. *Wendy H. v. City of Philadelphia,* 849 F.Supp. 367, 371 (E.D.Pa.1994). In providing a child with foster care, "the state assumes an important continuing, if not immediate, responsibility, for the child's well-being. In addition, the child's placement renders him or her dependent upon the state, through the foster family, to meet the child's basic needs." *D.R.,* 972 F.2d at 1372.

 The required "professional judgment" standard for the state's care in mental institutions is extended as well to the proper duty of care owed to a foster child. *Wendy H.,* 849 F.Supp. at 372. Under this standard, defendants could be held liable if their actions were "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 372 (quoting *Youngberg v. Romeo,* 457 U.S. 307, 323, 102 S.Ct. 2452, 2462, 73 L.Ed.2d 28 (1982)).

 Defendants' alleged conduct of ignoring warnings and reports of abuse prior to and during the placement process could constitute a failure to adhere to the "professional judgment" standard. Even if defendants did not have actual knowledge of the harm or risk, evidence of simple misconduct toward plaintiffs is actionable, *Wendy H.,* 849 F.Supp. at 374 (citing *La-Shawn A. v. Dixon,* 762 F.Supp. 959, 993, 996–98 (D.D.C.1991)). Moreover, plaintiffs contend they were forced to engage in sexual activities with the Crawfords' son (Pl's Compl. ¶ 31, 33, Am. Compl. ¶ 31, 33). *Cf. Andrea L. v. Children and Youth Services of Lawrence County,* 987 F.Supp. 418, 422 (W.D.Pa.1997) (motion to dismiss would likely have been denied had plaintiff's complaint averred that sexual contact with foster family's son was "abusive, coerced, or unwanted"). As plaintiffs have stated an actionable claim arising from the alleged deprivation of their substantive Fourteenth Amendment due process rights, defendants' motion to dismiss the Fourteenth Amendment claims will be denied.

## D. Eighth Amendment

 Plaintiffs further assert violations by the defendants of their Eighth Amendment right to be free of cruel and unusual punishment. The Supreme Court has deemed Eighth Amendment protection appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. *Ingraham v. Wright,* 430 U.S. 651, 671–72, n. 40, 97 S.Ct. 1401, 1412–13, n. 40, 51 L.Ed.2d 711 (1977). *See also City of Revere v. Massachusetts General Hospital,* 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77

L.Ed.2d 605 (1983) (Eighth Amendment protection not available when no formal adjudication of guilt was made against person shot by police officer).

Echoing the Supreme Court, the U.S. Court of Appeals for the Third Circuit ruled that protection under the Eighth Amendment is appropriate only in the context of a formal adjudication of guilt in a criminal prosecution, and, particularly, is not an appropriate source for determining the rights of the involuntarily committed. *Romeo v. Youngberg*, 644 F.2d 147, 156 n. 8, (3d Cir.1980) (en banc), *vacated on other grounds*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). *See also Marshall v. Borough of Ambridge*, 798 F.Supp. 1187, 1193 (W.D.Pa.1992); *Ford v. Johnson*, 899 F.Supp. 227, 230 (W.D.Pa.1995); *A.S. A.S. By and Through Blalock v. Tellus*, 22 F.Supp.2d 1217 (D.Kan.1998). Given the established law on this issue, defendants' motion to dismiss plaintiffs' Eighth Amendment claims will be granted.

### E. Federal Statutes

Plaintiffs also rely on two federal statutes, the Federal Adoption Assistance and Child Welfare Act, 42 U.S.C. § 670, et seq. ("FAACWA"), and the Child Abuse Prevention and Treatment Act, 42 U.S.C. § 5101, et seq. ("CAPTA"), in Counts X and XI of their complaint. Defendants argue that these claims fail to state a claim upon which relief can be granted because plaintiffs have not identified the relevant statutory provisions. Under the liberal federal pleading rules, the fact that a complaint does not cite the specific statutory provisions does not require dismissal. *See Northrop v. Hoffman of Simsbury, Inc.,* 134 F.3d 41 (2nd Cir.1997); *Thomas v. New York City*, 814 F.Supp. 1139 (E.D.N.Y.1993). *See generally* 5A Charles A. Wright & Arthur R. Miller § 1357 at 337. The well-established rule is that a complaint survives a motion to dismiss as long as it contains a set of facts for which relief may be granted. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80; *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir.1988).

### 1. FAACWA

██ Plaintiffs invoke the FAACWA in asserting that they were deprived by the defendants of the following rights protected under this statute: placement in foster homes that conform to nationally recommended standards; appropriate services; placement in the least restrictive, most family-like setting; proper care while in custody; protection; planning and services that will assure their permanent placement; regular judicial or administrative reviews; and the receipt of services in a child-welfare system with an adequate information system (Compl.¶ 119, Am. Compl.¶ 122). Although we conform to the general rule stated above that identification of statutory provisions is not essential to state a complaint, it is necessary in the case at hand. Plaintiffs' failure to identify the specific statutory provisions is problematic because of the conflicting decisions on whether the FAACWA allows a private right of action. A landmark Supreme Court decision, *Suter v. Artist*, 503 U.S. 347, 355–63, 112 S.Ct. 1360, 1366–70, 118 L.Ed.2d 1 (1992), held that a private individual could not bring a § 1983 claim to enforce § 671(a)(15) of the FAACWA.[4] In dicta, the Court stated that Section 671(a)(9) was unenforceable as well. *Id.* at 359, 112 S.Ct. 1360.

The Court, however, did not rule on the enforceability of other provisions of the statute. Some courts have extended the *Suter* decision to other provisions of the statute. *Baby Neal v. Casey*, 821 F.Supp. 320, 328 (E.D.Pa.1993), *rev'd on other*

---

4. 42 U.S.C.A. § 671(a)(15) requires that in order for a State to be eligible for payments, it shall have a plan approved by the Secretary which provides that, "in each case, reasonable efforts will be made (A) prior to the placement of a child in foster care, to prevent or eliminate the need for removal of the child from his home, and (B) to make it possible for the child to return to his home."

*grounds,* 43 F.3d 48 (3d Cir.1994) (holding unenforceable as a private action plaintiff's claims under §§ 627(a)(2)(A), (B), and (C), 627(b)(3), and 671(a)(15)); *Thomas v. New York City,* 814 F.Supp. 1139, 1152 (E.D.N.Y.1993) (ruling that there is "no private right of action under the Federal Adoption Assistance and Child Welfare Act"); *Doe By and Through Guardians and Next Friends G.S. v. Johnson,* CIV. No. 92 C 7661, 1993 WL 50845 (N.D.Ill. Feb. 24, 1993)(dismissing plaintiff's action under Section 671(a) pursuant to *Suter* decision). However, other courts have interpreted the 1994 Social Security Amendments of Congress[5] to allow provisions of the FAACWA enforceable as a private action. *Jeanine B. ex rel. Blondis v. Thompson,* 877 F.Supp. 1268, 1285 (E.D.Wis.1995) (motion to dismiss denied for claims brought under sections other than 671(a)(15)); *Marisol A. by Forbes v. Giuliani,* 929 F.Supp. 662, 683 (S.D.N.Y. 1996), *aff'd,* 126 F.3d 372 (2nd Cir.1997) (Court found "no evidence that Congress has indicated its intent to preclude private plaintiffs from seeking to enforce provisions of the Adoption Assistance Act other than § 671(a)(15))".

Clearly, we cannot rule on the viability of plaintiffs' claims under this statute without identification of the specific provisions sought for redress. Thus, we shall dismiss Counts X and XI as they pertain to the FAACWA, as well as the relevant portions of Counts VII, VIII, and IX which allege defendants' negligence per se under this statute. However, we grant leave to plaintiffs to amend these Counts in order to identify the relevant provisions of the FAACWA under which relief is sought.

5. *See* 42 U.S.C. § 1320a–2.

6. In their complaint, plaintiffs allege that defendants deprived them of rights under CAPTA, including the right to prompt and appropriate investigation of reports of abuse or neglect, to protection from those who endanger their health and welfare, and to such administrative procedures, trained and quali-

## 2. CAPTA

■ Counts X and XI allege violations of CAPTA. CAPTA in part requires states to implement procedures for investigation of child abuse and protection of children in order to receive federal funds. 42 U.S.C. § 5106a(b)(2). Although plaintiffs' complaint does not identify the specific provisions of CAPTA under which they seek redress, we can easily infer that their claims fall under §§ 5106a(b)(2) and (3).[6]

The majority of courts, including the two appellate level courts to address this issue, have ruled that CAPTA does not create a private right of action. *Baby Neal,* 821 F.Supp. at 329 (holding that CAPTA is a "mere federal-state funding statute which did not create enforceable rights under 42 U.S.C. § 1983."); *Doe v. District of Columbia,* 93 F.3d 861 (D.C.Cir.1996); *Tony L. v. Childers,* 71 F.3d 1182 (6th Cir.1995) (McKay, J., 10th Cir. Judge, sitting by designation); *A.S. By and Through Blalock v. Tellus,* 22 F.Supp.2d 1217 (D.Kan. 1998); *Eric L. By and Through Schierberl v. Bird,* 848 F.Supp. 303 (D.N.H.1994); *Matter of Baby K.,* 832 F.Supp. 1022 (E.D.Va.1993), *aff'd* 16 F.3d 590, *cert. denied* 513 U.S. 825, 115 S.Ct. 91, 130 L.Ed.2d 42. *But see Marisol A.,* 929 F.Supp. at 684; *Jeanine B. By Blondis v. Thompson,* 877 F.Supp. at 1286.

Relying on a prior Supreme Court case, the Sixth Circuit applied a three-part test to determine whether § 5106a(b)(2) creates enforceable rights within the meaning of § 1983:(1) whether the provision in question was intended to benefit the plaintiff, (2) whether the statutory provision in question creates binding obligations on the defendant governmental unit rather than merely expressing a congressional prefer-

fied personnel, programs, and facilities that are necessary to deal effectively with child abuse and neglect in Philadelphia County (Pl's Compl. ¶ 120, Am. Compl. ¶ 123). 42 U.S.C. §§ 5106a(b)(2) and (3) include similar language, leading the court to believe that plaintiffs rely on these two provisions in their cause of action.

ence, and (3) whether the interest the plaintiff asserts is specific enough to be enforced judicially, rather than being "vague" and amorphous. *Tony L.,* 71 F.3d at 1187 (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 509, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990)). Finding that the relevant provision of CAPTA, 42 U.S.C.A. § 5106a(b)(2), satisfied the first two prongs of the test, the Sixth Circuit found that the statute lacked sufficient guidelines to satisfy the third prong. *Tony L.,* 71 F.3d at 1189. Section 5106a(b)(2) of CAPTA requires an investigation to be initiated promptly upon receipt of a child abuse report and for immediate steps to be taken to protect the abused child. Despite this language, the Sixth Circuit found that CAPTA fails to mandate a particular means of investigation or state what type of actions must be taken to protect abused or neglected children. *Id.* at 1189, thus rendering the provision "vague and amorphous." *Wilder,* 496 U.S. at 509, 110 S.Ct. 2510. In dicta, the Sixth Circuit suggested that § 5106a(b)(3) does not create an enforceable right as the Supreme Court in *Suter* rejected a similar provision. *Id.* at 1188, n. 12.

We are persuaded by the view of the majority on this issue. Since the CAPTA clearly does not create a private right of action under 42 U.S.C. § 1983, we grant defendants' motion to dismiss the claims under Counts X and XI of plaintiffs' complaint pertaining to the CAPTA. Accordingly, we also dismiss the claims in Counts VII, VIII, and IX seeking redress for defendants' alleged negligence per se under this statute.

### Conclusion

An appropriate order follows.

### ORDER

AND NOW, this 14th day of September, 1999, upon consideration of the Motion of Defendants, Marlene H. Rivers, Tinea Mimms, and the Women's Christian Alliance to Dismiss Counts I through XII of Plaintiffs' Complaint and for the reasons set forth in the preceding Memorandum, it is hereby ORDERED that the Motion is GRANTED in part and DENIED in part. It is further ORDERED that:

1. Defendants'[1] Motion to Dismiss the First, Second and Third Counts is DENIED as MOOT;

2. Defendants Motion to Dismiss the Fourth, Fifth and Sixth Counterclaims is DENIED;

3. Defendants' Motion to Dismiss the Negligence Per Se claims is DENIED as it relates to the Pennsylvania Child Protective Services Law and GRANTED as it relates to the Child Abuse Prevention and Treatment Act ("CAPTA") and the Federal Adoption Assistance and Child Welfare Act ("FAACWA"). As such, the CAPTA and FAACWA Negligence Per Se claims against the Defendants are hereby DISMISSED. Plaintiffs, however, are granted leave to file an amended complaint within twenty (20) days of the date of this order to identify the relevant provisions of the FAACWA under which relief is sought;

4. Defendants' Motion to Dismiss the Gross Negligence claims is GRANTED in so much as they are wholly separate claims and not merely claims under the general negligence theory with gross negligence as the alleged standard of care violated. With such qualifications, the Gross Negligence claims against the defendants are hereby DISMISSED;

5. Defendants' Motion to Dismiss the Fifth Amendment claims is GRANTED and these claims against the defendants are hereby DISMISSED;

6. Defendants' Motion to Dismiss the Eighth Amendment claims is GRANTED and these claims against the defendants are hereby DISMISSED;

1. "Defendants" refers hereinafter to only the defendants, Rivers, Mimms and WCA.

7. Defendants' Motion to Dismiss the Fourteenth Amendment claims is DENIED;

8. Defendants' Motion to Dismiss the FAACWA claims against the defendants is GRANTED with leave for the plaintiffs to file an amended complaint within twenty (20) days of the date of this order to identify the relevant provisions of the statute under which they seek relief;

9. Defendants' Motion to Dismiss the CAPTA claims against the defendants is GRANTED and these claims against the defendants· are hereby DISMISSED;

10. Defendants' Motion to Dismiss the Vicarious Liability claims against the defendants is GRANTED and these claims against the defendants are hereby DISMISSED.